THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* DEWEY TALBE *et al.* Plaintiffs in Error.

*Opinion filed April 23, 1926.*

1. CRIMINAL LAW—*when instruction as to penalty is not prejudicial.* In a prosecution for assault with intent to rape, an instruction which correctly states the penalty for the offense charged is not prejudicial because it includes the penalty for assault to commit other offenses.

2. SAME—*what statement of counsel during examination of jury is not improper.* A statement of counsel for the prosecution, by way of instruction, during the examination of the jury, as to what will warrant a verdict of guilty beyond a reasonable doubt, and the approval of such statement by the court, will not constitute prejudicial error where the statement is correct in substance and where no instruction is given as to what is necessary to find the defendants guilty beyond a reasonable doubt.

3. SAME—*what is sufficient to prove venue.* It is sufficient to prove venue that the whole evidence leaves no reasonable doubt as to the crime charged having been committed at the place laid in the indictment.

4. SAME—*when verdict of guilty of assault with intent to rape is sufficient.* In a prosecution for assault with intent to commit rape, a verdict finding the defendants "guilty of an assault to commit rape, in manner and form as charged in the indictment," is not subject to the objection that it does not find the defendants guilty of the specific intent charged, as the intent is by necessary implication found by the jury in such verdict.

5. SAME—*verdict is not construed as strictly as indictment.* A verdict is not to be construed with the same strictness as an indictment and all reasonable intendments will be indulged in its support.

6. SAME—*proper direction as to verdict is an important duty of court.* There is no duty connected with the trial of a case by court and jury that is more important and that calls for greater care by the trial judge than the directing by him of the return of a verdict by the jury in proper and correct form, as no judgment should be endangered by a mere question as to the form of the verdict.

7. SAME—*proof of attempt of defendants to break jail is admissible.* Proof of an attempt of the defendants to break jail where they were being held for the crime charged in the indictment is admissible in evidence, as the escape or attempted escape from custody or the flight of one accused of crime may be proved on the trial as a fact raising a presumption of guilt.

8. SAME—*when party is guilty as accessory in assault with intent to rape.* A party is guilty as accessory, and therefore guilty as principal, of the crime of assault with intent to rape where the evidence shows that he was present while his co-defendant committed the assault and that by his conduct and words he encouraged his co-defendant to continue in his attempt.

9. SAME—*when a verdict will not be set aside on the evidence.* The most important and useful function which the jury is required to perform is to determine on which side of the controversy the truth lies, and where the evidence is directly in conflict as to material facts and irreconcilable, the Supreme Court is not warranted in reversing the finding of the jury on the facts where no prejudicial error is shown, even in a case where the finding depends mainly on the testimony of one witness.

WRIT OF ERROR to the Circuit Court of Madison county; the Hon. J. F. GILLHAM, Judge, presiding.

WILBUR A. TRARES, for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, JESSE R. BROWN, State's Attorney, and MERRILL F. WEHMHOFF, for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiffs in error, Dewey Talbe and Clem Teddric, were jointly indicted in the circuit court of Madison county with one Norman Crane, charged with an assault with intent to rape. Plaintiffs in error moved to quash the indict-

ment, and upon their motion being overruled pleaded not guilty. Upon a trial the jury found them guilty as charged in the indictment and found their ages to be twenty-four and twenty-three. years, respectively. They were sentenced to the penitentiary for an indeterminate term of not less than one year nor more than fourteen years. They have prosecuted this writ of error for a review of the record.

The evidence of Florence Blurton, prosecuting witness, is in substance the following: She was a married woman of the age of twenty-seven years, had been separated from her husband seven years, has two children living with her mother, whose ages are ten and thirteen years, was working at May's restaurant, and lived at the Diamond Hotel, in Edwardsville, which is located on the corner of Main and Vandalia streets. Two stairways, connected by halls,—one entering from Vandalia street and one from Main street,— lead to the rooms of the second floor, on which her room was located. About eight o'clock in the evening of July 30, 1924, she went to her room. She was ill at the time and shortly after she had entered the room she became dizzy and fell on the floor, remaining unconscious until eleven o'clock. At that time she regained consciousness enough to get up and sit on the bed and then she again lost consciousness. She did not remember how long she remained unconscious the second time, but the first thing she remembered was hearing a knock at her door and someone ask her what she wanted. She replied that she wanted a drink of water. She reached for a water glass in the window near her bed, and as she turned around saw a man standing in the door whom she did not recognize but whom she later identified as plaintiff in error Teddric. He said, "What do you want in the glass? Do you want a high ball?" She replied that she did not, and then Teddric said to her, "Do you know you are in a whore-house? And you might as well submit to what I am here for." He then threw her on the foot of the bed. She pushed her hand under his

chin. He didn't seem to be using all his strength. "He was only just kind of worrying me down." Teddric said to Talbe, "You take her hands." Talbe replied, "I won't have to take her hands; she will be all right if you will just worry her down; she has got no strength." Teddric then struck her on the side of the head, and Talbe said, "Are you going to let her knock you out in the second round?" They let her get back to the door and out into the hall. They then called to Tub, (evidently Crane,) "Don't let her out of the hall." The big fellow she learned later to be Crane. She begged Crane to help her make those boys leave her alone. He shoved her back to them. Teddric then dragged her back into the room and threw her across the bed and put his knees on her chest. She shoved her hand under his chin and got him loose. He threw her on the bed again and put his knees in between her knees. She then noticed that she had gotten out of her kimono and that her waist was torn "down here," and she began "to holler for Ferd Rohrkaste. Every time I hollered Teddric would choke me. He then threw me down on the floor and said, 'If you holler again I will stomp the life out of you.'" She then saw a light in Ferd Rohrkaste's room through the French doors, and one of the two who didn't have hold of her turned the light on and said, "Boys, let's run." She stated that she had on a French slip, a kimono and another little combination suit,—handing a package to her examiner, which he opened. She then stated that the garment that was torn was the one she had on when she was attacked and that it was not torn before that time; that Teddric stripped the kimono from her in the scuffle. She stated that the garments were in the same condition as on the night she removed them after the attack. She stated that the torn garment was in the very same condition at that time as it was when she was attacked by Teddric and the garments were put in evidence. She further stated that her judgment was that Teddric was about twenty-four years old

and Talbe about twenty-three, and that she had never seen either of them before the night she was attacked. Talbe did not talk to her in her room about intercourse an hour before she was attacked. There are two windows in her room on the front, and the windows face Main street. The door is on the side of her room back from the front windows. There are French double doors leading into her room from Rohrkaste's room. The light showed through the glass and draperies on the French doors when Rohrkaste lit the light in his room. He and his wife live in that room. Mr. and Mrs. Trent occupied rooms just parallel with her room and on the opposite side of the stairway. When Teddric came into her room the first time he did not ask her to have intercourse with him. He just came in and gave her a jerk. He was in her room the first time about fifteen minutes and about the same the second time. She was out in the hall about four or five minutes, and when she went back Teddric threw her on the bed for the second time and put his knees on her, and she "began hollering, 'Ferd, help me!' " She also stated that Teddric was in her room four or five minutes before she started screaming, and that Ferd Rohrkaste came into her room just after Teddric and Talbe had left.

Isaac Weinberg lives in Chicago, was stopping at the Diamond Hotel, was in the business of demonstrating transformers, and testified: He met Teddric and Talbe on the morning of July 30, a little after twelve o'clock that night, in his room. They left his room about five minutes later with Crane, and he went with the three of them to the Unique restaurant, in Edwardsville, and stayed there about an hour or a little longer. The four of them then returned to the hotel. The witness did not enter the hotel with them but left them on Main street, while he went to the other entrance and smoked a cigarette. They stated they were going to a certain room up-stairs for a dollar and a quarter, and in about seven or eight minutes they came running

down the Vandalia street stairs and all of them went to a garage, and on their return a little later to the hotel a police officer stopped them, and Talbe said to the witness, "Whatever happens, say she called us in." Teddric had stated to them at the restaurant, "I am going to a room in the Diamond Hotel where a certain woman is, and I am going to have intercourse for a dollar and a quarter." Mrs. Blurton identified Teddric, Talbe and Crane at the police station.

A police officer, P. J. Zimmerschied, of Edwardsville, testified that he passed the Schwartz building about 11:15, July 30, 1924, and was standing in front of a jewelry store about fifty yards from the hotel when he heard a woman screaming. He walked toward the Diamond Hotel and saw Ferd Rohrkaste and wife with their heads out of the window. He was directed to Mrs. Blurton's room, where he went and saw her. She had on a kimono and pulled it back and showed him where her nightgown had been torn about six inches on the left side. He and another policeman also testified that after they had taken Teddric and Talbe and Crane to the police station that Mrs. Blurton identified the three of them and said that those were the ones that tried to rape her. One of them called her a liar.

Ferdinand Rohrkaste testified, in substance, that he was a chauffeur and that he and his wife lived in a room adjoining Mrs. Blurton's; that about 1:30 the night of July 30 he was awakened by screams in her room and he heard a scuffling noise in there. He recognized by the voice that it was Mrs. Blurton, and heard her say, "They are choking me! Help!" By the time he dressed and got to her room the men were gone and he did not see them until later at the police station; that the prosecutrix was in a weak physical condition and could scarcely stand alone. Police officer Zimmerschied and other police came to her room and she told them what happened.

Otto Miller, the jailor, testified that he was the jailor of Madison county; that on September 10, 1924, the defend-

ants Teddric and Talbe were incarcerated in the jail for the offense charged in this indictment,—assault with intent to commit rape,—and were not detained for any other offense; that on said date Dewey Talbe was standing at the jail door with a sack of paper, and as he went into the jail Talbe asked him to take it out. As he reached for the sack Talbe grabbed him by the neck and demanded that he give him the keys. Teddric and Talbe got the keys and then attempted to get out of the jail. They got as far as the outer door and then came back, gave him a beating and demanded the keys to the outer door, and that these two and a Mexican that was in there all had him down, beating him, and tried to break out of the jail.

Plaintiffs in error, Talbe and Teddric, were the only ones to testify for the defendants, and their evidence is in substance as follows: They both lived at Edwardsville and Teddric lived at the Diamond Hotel. On the evening in question they met at the United cigar store, and about 11 or 12 o'clock they, with Ike Weinberg and Norman Crane, ate lunch at the Unique restaurant. Teddric testified that while there Talbe said that there was a whore up in No. 6 at the hotel. After they were through eating they all went back to the hotel, and Teddric stated that he knocked on her door while Talbe was leaning against it; that he told her that he came up for "an intercourse;" that she told him she had a date with another fellow who might be there at any time, and that she was not feeling very well, and asked who was in the hall; that he told her that it was a couple of friends of his, Crane and Weinberg; that the door was opened and he stood there and talked to her a little bit; that she said she had been leading a little too fast a life lately and it was getting the best of her; that he was in her room about five or ten minutes and did not have hold of her at any time; that she knew Talbe and asked who the other fellows were; that she had on some kind of a little nightgown of dark-looking goods that struck her

about the knees; that she told Crane she had a date for a later time and that they would have to be careful about so many coming up; that she was out in the hall about five minutes, and that he told her, "If you don't want to do anything to-night there is no use fooling around," and that she had better get back in her room if somebody else was coming. He pushed her back in the room and pulled to the door and the three of them went to the garage with Weinberg. They were all arrested as they returned to the hotel, about fifteen minutes later. Teddric denied that he at any time tore the clothing of Mrs. Blurton, and stated that he did not at any time have his knees on her chest or assault her at any time with intent to have carnal knowledge of her forcibly and against her will, and that he had never seen her before. He further stated that he did not at any time that evening tell her that she might as well submit as she would have to submit to it anyway. He didn't hear any screams while he was there.

Talbe corroborated Teddric in his testimony, and also stated that he was a coal miner, and on the evening in question, a little after ten o'clock, he met one Charles Henry, and they stopped and talked to a fellow by the name of Webster, across the street from the hotel building; that he looked up and saw a light in the front window of the hotel and a girl standing in the room, motioning to them; that he afterwards found out that the girl was Florence Blurton; that he and Henry went across the street and up the steps of the hotel and knocked on her door; that she turned the key and unlocked the door, saying, "Come on in;" that he stepped in and said, "What do you want?" She said, "I thought it was a friend of mine from Madison." He thought he knew what she wanted and approached her and offered to pay her for an intercourse, but she said, "No; I ain't feeling very well; you come back some other night." He and Henry then left and went to the Unique restaurant, where they found Crane, Teddric and Weinberg. They

asked him where he·had been, and he told them that there
was a whore up in No. 6 of the hotel. His further state-
ment is that after they finished eating they all went back
to this woman's room, and he corroborates Teddric in what
then took place there. He expressly stated that he didn't
hear any screams while he was there; that Teddric did not
ask him to help him, and that he did not tell Teddric to
keep it up, she will soon submit, or any words to that effect.
He never said anything to her or took any part in the con-
versation and did not shove her at any time. He never
saw any light in the adjoining room. They came down
Vandalia street stairs when they left the girl's room, and
he and Weinberg sat on the bench and smoked a cigarette
for about five minutes; that Teddric and Crane walked to
Harwood's garage and that he and Weinberg went there
later. He told about the officers arresting them, and stated
that Crane was a man twenty-five years old, six feet tall
and weighed about 215 or 220 pounds. He also stated that
Teddric was in the girl's room while they were there and
that he himself was standing at the door and that Wein-
berg and Crane were in the hall; that he never intended to
assault Mrs. Blurton with intent to have carnal knowledge
of her forcibly and against her will; that he had formerly
seen her in the latter part of 1923 in Madison, Illinois, at
Fourth and State street, in a place known as Big John's
place,—a Greek place which is a saloon and sporting house.
He talked with her but had never had intercourse with her;
and he further stated on cross-examination that neither he
nor Teddric made any move or effort toward the commis-
sion of the crime of rape; that Teddric did not put his
knees on her chest and did not choke her at any time, and
that while at her room he asked Mrs. Blurton if she had
beckoned to him from the window, and she answered, "Yes."

Mrs. Blurton testified in rebuttal that she was never in
Madison, Illinois, at a sporting house or at Big John's place
and did not beckon Talbe to come to her room; that Talbe

was not in her room twice that night; that she did not make a statement that her price was three dollars; that she didn't tell Teddric that she had been leading a little too fast life; and that she did not know Charles Henry. Isaac Weinberg further testified that he was not with Teddric, Talbe and Crane in Mrs. Blurton's room at the time in question.

It is first contended by the plaintiffs in error that the court committed error in approving the following statement as the law that the State's attorney made to the jurors while the jury was being selected to try the case, to-wit: "In order to warrant a verdict of guilty the State must prove beyond all reasonable doubt that the defendants are guilty in manner and form as charged in the indictment, and after hearing all of the evidence in this case if you have an abiding conviction of the guilt of the defendants, then they have been proven guilty beyond a reasonable doubt and you would be warranted in returning a verdict of guilty." We have examined all of the instructions given to the jury by the court in this case, some of which have also been criticised by the same counsel. No one of them contains the above proposition stated verbally to the jurors when they were being examined. We find that the instructions given by the court are such as have been approved by this court in a number of cases. Our conclusion is that the jury were accurately and fully instructed as to the law applicable to the case and that the defendants have no just cause of complaint against the instructions either given or refused by the court. The first instruction told the jury that an assault with an intent to commit murder, rape, mayhem, robbery, larceny or other felony shall subject the offender to imprisonment in the penitentiary for a term not less than one nor more than fourteen years. The objection to this instruction was that it stated the penalties for other crimes not charged in the indictment, which was, of course, technically error; and also that the jury had nothing to do

with fixing the penalty and should not have been informed as to the penalty. Juries have been often instructed as to the penalty for the crime charged, even in cases where the jury did not have the fixing of the penalty, and it can not be held as reversible error, and particularly so where there is no special reason why such an instruction should cause the jury to be prejudiced against the defendants. The instruction in this case stated correctly the penalty for the crime charged and for other crimes, and the giving of it was not prejudicial error. The substance of the proposition stated to the jury in their examination by the State's counsel has been approved by this court in a number of cases as a proper instruction to be given to a jury in a criminal case. While it is not happily worded, we do not think there was any reversible error committed by the State's counsel in that statement to the jury and the approval of it by the court.

The claim that the venue was not sufficiently proved in this case is not tenable. It is sufficient proof of the venue if the whole evidence leaves no reasonable doubt as to the crime charged having been committed at the place laid in the indictment. (*Porter* v. *People,* 158 Ill. 370; *Weinberg* v. *People,* 208 id. 15.) The evidence discloses that the prosecuting witness, at the time the crime was committed against her, was in a room in a hotel on Main street, in the city of Edwardsville. The evidence of several other witnesses discloses the same fact. The evidence of John Mead showed that that hotel was in Edwardsville, Madison county, Illinois, when he stated that he lived in Edwardsville, Madison county, Illinois, was a night patrolman of the Edwardsville police force, and was on duty the morning of July 30, 1924, when he was up at the Diamond Hotel on that night and saw Talbe and Teddric, etc.

It is further contended that the verdict in this case is insufficient, not responsive to the issues, and that it merely finds the defendants guilty of a simple assault. The verdict is in this language: "We, the jury, find the defendants,

Dewey Talbe and Clem Teddric, guilty of an assault to commit rape, in manner and form as charged in the indictment, and we find the age of the defendant Dewey Talbe, 24 years; Clem Teddric, 23 years." The real claim is that the verdict does not find the specific intent charged in the indictment. It does find that the defendants were guilty of an assault to commit rape in manner and form as charged in the indictment,—that is, "unlawfully, violently and feloniously, forcibly and against her will," etc. We think that the intent to commit rape was by necessary implication found by the jury by their verdict, and that under the holding of this court in *People* v. *Kargula,* 285 Ill. 478, and *People* v. *Tierney,* 250 id. 515, the verdict should be held to be sufficient. A verdict is not to be construed with the same strictness as an indictment and all reasonable intendments will be indulged in its support. We desire, however, to say that there is no duty connected with the trial of a case by a court and jury that is more important and that calls for greater care by the trial judge than the directing by him the return of a verdict by the jury in proper and correct form. No judgment of a court in a criminal case, or any other case, should be endangered by a mere question as to the form of the verdict.

The court committed no error in permitting the State to prove that the defendants attempted to break jail and to escape therefrom. It has often been held by this court that the escape or attempted escape from custody or the flight of one accused of crime may be proven on the trial as a fact raising a presumption of guilt. (*People* v. *Duncan,* 261 Ill. 339.) The court committed no errors in its ruling on the admissibility or inadmissibility of evidence in the case. The State's attorney committed no reversible error in his argument to the jury.

It is finally contended that the evidence is not sufficient to warrant a verdict of guilty against the defendants, and

particularly against the defendant Talbe. The defendant Talbe was present at the time of the assault by Teddric with the intent to commit rape. If the prosecuting witness' evidence is true, it proves that his conduct showed a design to incite and to encourage the defendant Teddric to continue in the assault that he was making on the prosecuting witness. His conduct was more than mere negative acquiescence in the commission of the crime, and under the holding of this court in *People* v. *Cione,* 293 Ill. 321, the evidence showed that he was guilty as an accessory and therefore guilty as a principal. It is true that the defendants both contradicted the testimony of the prosecutrix, but it is also true that the defendants were contradicted in very material facts testified to by them by other disinterested witnesses who by the same testimony corroborated the prosecutrix. We have frequently held that the most important and useful function which the jury is required to perform is to determine on which side of the controversy the real truth lies where the evidence is directly in conflict as to material facts and irreconcilable, and that this court is not warranted in reversing the finding of a jury on the facts where no reversible error is shown, even in cases where the finding depends mainly on the testimony of one witness. *Gainey* v. *People,* 97 Ill. 270; *People* v. *Zurek,* 277 id. 621.

We have set out substantially all the evidence in this record, and if the evidence of the prosecutrix be true, and the jury were warranted in so finding, the defendants were clearly guilty of an assault with intent to commit rape as charged.

The judgment of the court is affirmed.

*Judgment affirmed.*