(No. 31995.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHARLES ANGELO DEPOMPEIS, Plaintiff in Error.

*Opinion filed November 27, 1951—Rehearing denied Jan. 21, 1952.*

GEORGE M. CRANE, and LAWRENCE A. BERMAN, both of Chicago, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, ARTHUR F. MANNING, WILLIAM J. McGAH, JR., and JOHN J. COGAN, all of Chicago, of counsel,) for the People.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

Plaintiff in error, Charles Angelo DePompeis, hereinafter referred to as defendant, was convicted by a jury in the criminal court of Cook County of the crime of armed robbery and was sentenced to the penitentiary for not less than ten years and not more than twenty years.

He comes to this court by writ of error to review that conviction.

The evidence disclosed that on Thursday afternoon, January 20, 1949, about 1:30 o'clock, a man entered the establishment of Peacock Cleaners at 3937 Lawrence Street, in the city of Chicago. The complaining witness was alone in the back part of the room when he entered. She testified that she started toward the front and saw the man coming toward her with a gun in hand; that he told her to get to the back of the room and when she asked what for he said, "I am going to rob you and I am going to rape you." She then related how this man made her put her sweater over her head so she could not see him, forced her into a small closet, tore off her clothing, attempted to rape her, and being unable to accomplish this act in the small closet, he forced her, at gun point, to commit an unnatural sex act upon him. She further testified that he took thirteen dollars from her purse and eighteen dollars from the cash register. She stated that she was frightened and hysterical and as soon as he left she ran to the home of a lady next door who called the police. When the police arrived she described the man as being about 5 feet 4 inches tall, weighing 120 to 140 pounds, with dark, wavy hair and dark eyes, dressed in a tan jacket and blue trousers, and was bareheaded. Between January 20, and the following Wednesday, January 26, the witness was taken by the police to various "show ups" to view police suspects and photographs, and on that Wednesday she identified the defendant among four suspects at the police station. At that time he was dressed in a tan jacket and brown trousers and was bareheaded. Adolph Wolf, a Chicago police officer, testified that on the afternoon of January 25 he was in the Wilson Avenue "L" station when he saw the defendant, who answered a description he had heard at roll call; that he stopped the defendant, advised him he was a police officer, and defendant dashed through

a door dropping a loaded automatic pistol out of a newspaper he had been carrying; that he scuffled with defendant, subdued him and sent him to the police station; that in the scuffle the defendant tore part of the skin off one of his legs and he went to the hospital for treatment. The automatic pistol and the torn skirt of the complaining witness were introduced in evidence.

Janet DePompeis, wife of defendant, testified that her husband was at home with her all day on January 20, 1949, and they went to work together at 4:30 in the afternoon; that she remembered the day because it was the day before her husband's birthday. She further testified that she saw defendant at the police station on January 27 and that his eyes were black, his face bruised and his ribs were taped. The defendant testified in his own behalf and denied being in the Peacock Cleaners on the day of the offense, stated that he was at home all that day until he left his home about 3:00 or 3:30 in the afternoon to go to work. He stated that when he was viewed by the complaining witness at the police station he was not in a group but was alone; that the witness then said, "It looks like him but I am not sure."

Dr. Bernard Skorodin, a psychiatrist, testified that defendant was suffering from schizophrenia and was adjudged mentally ill on September 22, 1947, and committed to Elgin State Hospital. He further testified as an expert witness that if defendant was still suffering from this illness on January 20, 1949, he may have known the difference between right and wrong, but might not always have the power to choose between the two. Dr. William H. Haines, a physician, head of the Behavior Clinic of the criminal court of Cook County, testified in rebuttal that he examined defendant on March 1, 1949, and gave his opinion, over defendant's objection, that the defendant knows the nature of the charge against him and is able to co-operate with counsel; that he knows the difference

between right and wrong, can choose between them, and that he is sane. He further testified that, based on his examination of March 1, 1949, the defendant is not committable to any institution for the feeble-minded or insane.

The defendant contends that when he raised the issue of insanity the burden was on the State to prove, beyond a reasonable doubt, that he was sane at the time of the commission of the offense, and this they failed to do. We agree with defendant's interpretation of the law (*People v. Skeoch,* 408 Ill. 276,) but we cannot agree that the State has failed to sustain its burden. The adjudication of mental illness of defendant on September 22, 1947, did not place him in the status of a legally insane person on January 20, 1949, as defendant contends. Every man is presumed sane until this presumption is overcome by evidence sufficient to raise a reasonable doubt of sanity at the time of the commission of the crime. Then the burden is upon the State to prove sanity beyond a reasonable doubt. This issue can be proved as any other issue in the case. An adjudication of insanity prior to the offense presents the issue but raises no presumption that the insanity has continued unless it has been proved that the insanity was of a permanent and continuing nature. There was no such proof here. This defendant was adjudged "mentally ill," a term which embraces all sorts of mental disorders, permanent, temporary or spasmodic. So far as the proof of that adjudication is concerned here, its only effect was to raise the issue and to present another evidentiary fact for consideration of the jury in conjunction with all the other evidence to determine if, at the time of the commission of the offense, the defendant was mentally able to distinguish right from wrong and had the ability to choose between the two. (*Langdon v. People,* 133 Ill. 382; *People ex rel. Wiseman v. Nierstheimer,* 401 Ill. 260.) The evidence here shows that defendant, after his commitment, ran away from the hospital after a few

days, had been at large since, and there was no evidence of any abnormal conduct between the time of the adjudication and January 20, 1949. The testimony of the defendant's medical expert was that his mental disorder was not necessarily permanent or continuing and that on January 20, 1949, he might have known the difference between right and wrong but might not have been able to choose between the two. This testimony was based on his examination made on September 22, 1947. The medical expert testifying in rebuttal, basing his testimony on an examination made March 1, 1949, testified that defendant, on the date of the offense, was able to distinguish between right and wrong, was able to choose between them and was sane. The jury was properly instructed on the issue of insanity, it heard the testimony and observed the witnesses and we believe it was justified in finding from this evidence that defendant was sane at the time of the commission of the offense and at the time of the trial, and in returning its verdict finding defendant guilty as charged in the indictment.

The defendant next contends that the verdict was contrary to the evidence, in that the identification was unsatisfactory. He contends the uncorroborated identification of the complaining witness is insufficient to identify defendant beyond a reasonable doubt when she saw him only "a minute or so" in an excited and hysterical mental state. "The testimony of one witness as to identification, if positive and the witness credible, is sufficient to convict even though the testimony is contradicted by the accused." (*People* v. *Vaughn,* 390 Ill. 360.) The testimony of the complaining witness here was positive and her credibility was not attacked. She attended police "show ups" for six days after the offense, viewed hundred of suspects, and made no identification until she saw defendant with three other suspects, and then unhesitatingly pointed him out. She had an opportunity of observing the defendant as he

walked from the front to the back in the lighted room before she asked him what he wanted and before she had cause to be excited and again in the small closet when she was turned to face him and removed her sweater from over her head. This, again, is a question for the jury and we think its acceptance of this testimony as positive identification was correct.

The defendant contends that the trial court erred in permitting the complaining witness to testify as to the sex offense when he was on trial for armed robbery. This contention cannot be sustained. This evidence was inseparable from the evidence on the crime of armed robbery. This offense was not a disassociated or disconnected offense but was a part of the offense of armed robbery itself. The gist of the offense of armed robbery is the force and intimidation used in taking property from another. (*People* v. *Flaherty,* 396 Ill. 304.) This evidence was certainly competent to show the force and intimidation used. The defendant cites authorities which discuss the rule as to "independent and unrelated offenses," which obviously have no relevancy here.

Defendant also objects to the testimony of the police officer in regard to the circumstances of the arrest, his testimony that he had a description, and his testimony in regard to the gun. A police officer has a right to make an arrest without a warrant when he knows a felony has been committed and has reasonable grounds to believe that defendant is implicated, and, upon making the arrest, to search his person without a search warrant. (*People* v. *Reid,* 336 Ill. 421.) It is also competent to show that an accused, at the time of his arrest, possessed a weapon suitable for the commission of the crime with which he is charged, even though no claim is made that he actually used it in committing the particular crime. (*People* v. *Lenhardt,* 340 Ill. 538.) It is also competent to show the attempt of an accused to flee or to resist arrest as a cir-

cumstance of his guilt. (*People* v. *Talbe,* 321 Ill. 80.)
The witness's testimony that he had received a description
of a suspect was competent to show his knowledge that a
felony had been committed and to show he had reasonable
grounds to suspect this defendant. We believe all this
testimony was relevant and competent.

The defendant has objected to the refusal of three of
his tendered instructions and the giving of several of the
People's instructions. People's instruction No. 5 as given
to the jury reads: "The Court instructs the jury that in
order to find the defendant not guilty on the grounds of
insanity, such insanity must be clearly proven as to raise
a reasonable and well-founded doubt of the defendant's
guilt when the whole evidence is taken together." We
condemned this instruction in *People* v. *Skeoch,* 408 Ill.
276, and it should not have been given. The defendant
is not required to "clearly prove" his sanity and the doubt
does not have to be "well-founded." However, the court
gave defendant's instruction No. 2, as follows: "Once
evidence has been introduced that the defendant at the
time of the commission of the crime, did not have sufficient
mentality to distinguish between right and wrong as to
the particular act, or if he was able to distinguish between
right and wrong as to the particular act but that he was
incapable of exercising the power to choose between right
and wrong, then it becomes the duty of the State to prove
beyond a reasonable doubt that the defendant at the time
of the commission of the act had sufficient mentality to
distinguish between right and wrong as to the particular
act and that he was capable of exercising the power to
choose between right and wrong, and if the jury should
find that the State has failed to prove beyond a reasonable
doubt, either that the defendant was unable to distinguish
between right and wrong as to the particular act, or that
he was incapable of exercising the power to choose between

right and wrong, it then becomes the duty of the jury to find the defendant not guilty."

It will be noted that defendant's instruction directs a verdict while the People's does not. In addition, the court gave four other instructions, three for the People and one for the defendant, which properly and adequately instructed the jury as to the defense of insanity and the burden of proof. The instructions must be read as a series and if, when so read, a wrong instruction is not misleading to the jury it is not prejudicial error. (*People* v. *Haensel*, 293 Ill. 33; *People* v. *Moriarity*, 380 Ill. 148.) We are of the opinion that, under the circumstances of this case, this instruction, read with the other instructions, does not constitute reversible error. We have carefully examined all the other instructions, both those given and refused, and find no reversible error.

The defendant further objects to the fact that the court summarily overruled his motion for a new trial and sentenced him without giving him an opportunity to apply for probation. It appears from the record that immediately after the verdict was returned counsel for defendant made an oral motion to set aside the verdict and for a new trial, and this motion was denied by the court. There is nothing in the record to indicate that counsel asked that sentence be deferred or that he be given time to prepare and file a written motion, nor is there anything in the record to indicate that counsel asked leave to present an application for probation. This court cannot pass upon matters not in the record before us. Leave to file application for probation is discretionary with the trial court and denial thereof will not be reviewed. (*People* v. *Miller*, 317 Ill. 33.) Where the defendant asks for time to prepare and file a motion for a new trial, a reasonable time should be granted him for this purpose and when the written motion is filed the court can then determine whether he wants to hear

arguments or pass on the motion without argument. (*People* v. *Wilson*, 400 Ill. 603.) But where the trial is short and the issues few and simple, there is no abuse of discretion in passing upon a motion for a new trial immediately without hearing oral arguments on the motion. (*People* v. *Moretti*, 330 Ill. 422.) The defendant has not pointed out in his brief and argument how he has been injured by this summary ruling of the court and we are unable to see wherein the defendant has been deprived of any right which would justify a reversal of this judgment.

Numerous objections have been made by the defendant to alleged prejudicial comments by the court on the evidence, to the court's rulings and failures to rule on objections and to the conduct of the prosecuting attorney in examining the witnesses and making his argument. It would serve no useful purpose to discuss these matters in detail. We have read the entire record and find no error therein sufficiently prejudicial to the defendant to have affected the verdict in this case.

This judgment should be, and is, affirmed.

*Judgment affirmed.*