(No. 34253.—

The People of the State of Illinois, Defendant in Error, *vs.* Anthony Gambino, Plaintiff in Error.

*Opinion filed September 20, 1957.*

ANTHONY GAMBINO, *pro se.*

LATHAM CASTLE, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, L. LOUIS KARTON, and JOHN T. GALLAGHER, of counsel,) for the People.

Mr. CHIEF JUSTICE DAVIS delivered the opinion of the court:

The defendant, appearing *pro se,* seeks review of the judgment of the criminal court of Cook County sentencing him, under the Habitual Criminal Act, (Ill. Rev. Stat. 1953, chap. 38, par. 602,) to life imprisonment in the penitentiary after a jury had found him guilty of the crime of armed robbery and that he had theretofore, under the name of

Louis Stamos, been convicted of burglary and confined in the penitentiary for that offense.

The defendant contends that the trial court erred in admitting incompetent and prejudicial evidence which established the commission of other crimes for which he was not on trial. The armed robbery for which he was tried occurred on February 25, 1954, and three days later he was arrested and confined in the Cook County jail. His trial began on October 27, 1954, and the People introduced evidence, over objection, that he had participated in an armed escape from the jail on June 28, 1954, while awaiting trial on the armed robbery charge; that he remained at large until August 2, 1954, when he was arrested by Will County officers; and that he attempted to escape from them while being taken to the Joliet jail. Although this evidence showed the commission of other offenses, it was admissible. Upon the trial of an accused, it is competent to prove that he escaped or attempted to escape from custody as a fact raising a presumption of his guilt of the crime charged. (*People* v. *Talbe,* 321 Ill. 80; *Jamison* v. *People,* 145 Ill. 357.) Defendant also suggested that the court erred in permitting the People to prove that he stole an automobile on August 2, 1954. The record affords no basis for this contention since the only evidence of such theft is testimony that the defendant was rearrested while driving an automobile. However, had the defendant stolen an automobile in order to make good his escape, evidence of such fact would have been admissible. We have held that an accused, who commits an armed assault and steals the vehicle in which he seeks to escape from lawful custody, cannot complain when all the facts and circumstances are brought to light at his trial. *People* v. *Lawson,* 331 Ill. 380; also cf. *People* v. *Talbe,* 321 Ill. 80, 90; *Jamison* v. *People,* 145 Ill. 357, 376.

Objection is made that certain items of personal property allegedly taken in the robbery were received in evidence

without establishing that they were at any time in defendant's possession or under his control, and without adequate proof of their ownership. People's exhibits 1 through 5 were a revolver, an automatic pistol, an electric drill, a portable typewriter and a money changer. At the trial, Joseph Lapice, one of the victims of the robbery, positively identified the items as those taken in the robbery of the service station which was owned and operated by his brother, his son, and himself, as partners. Lapice further testified that the items were the property of the partnership and identified the defendant as one of two men who, at gunpoint, had taken them. He identified People's exhibit 6, his wallet containing his son's picture, and testified that the defendant forced him to get the wallet from his street clothes, which were in a locker, and deliver it to him. His testimony was fully corroborated in all particulars by an employee who was with him in the service station at the time of the robbery. This testimony clearly proved the ownership of the property and established the defendant's wrongful possession. In addition, the police officer who arrested the defendant testified that he had recovered the revolver, the drill, the money changer and the wallet from an apartment occupied by a woman who told him that the defendant had given her the key to the rooms a few hours before. When arrested on the street in front of the apartment the defendant told the officer that he lived "right there." This testimony, which connected the defendant with the premises where the property was found, was elicited for the most part on cross-examination and the defendant did not claim that it was improperly received.

He now suggests, however, that the articles were obtained as the result of an illegal search and seizure and should not have been received in evidence against him. At no time, either before or during the trial, did the defendant move to suppress this evidence, claim ownership, or request its return. When no timely motion to suppress the evidence

is made, property obtained by an unlawful search and seizure is admissible, if otherwise competent, relevant, and material. (*People* v. *Kalpak*, 10 Ill.2d 411; *People* v. *Valecek*, 404 Ill. 461; *People* v. *Winn*, 324 Ill. 428.) Furthermore, since the defendant neither claimed ownership of the property alleged to have been illegally seized, nor requested its return, he cannot complain of its seizure or use in evidence against him. *People* v. *Perry*, 1 Ill.2d 482; *People* v. *Edge*, 406 Ill. 490; *People* v. *Tabet*, 402 Ill. 93.

When the defendant was rearrested on August 2, 1954, the officers took an automatic gun from the cabin occupied by him, which was introduced in evidence at the trial as People's exhibit 8. It is undisputed that the defendant expressly consented to the search at which the gun was found and told the officers that it had been given to him by a friend. He does not contend that the gun was illegally seized but takes the position that it was incompetent and irrelevant and that its admission was prejudicial. The People's witnesses testified that the defendant was armed with a gun at the time of the commission of the robbery. It was competent to show that the defendant, at the time of his arrest, possessed a weapon suitable for the commission of the offense charged, even though no claim was made that he actually used it in committing the particular crime. (*People* v. *DePompeis*, 410 Ill. 587; *People* v. *Lenhardt*, 340 Ill. 538.) The court did not err in permitting the People to prove defendant's possession of the gun, and its admission, after the necessary foundation had been laid, was proper.

On November 1, 1954, the last day of the trial, defendant's counsel filed a motion asking the court to withdraw a juror and declare a mistrial on the ground that defendant's rights to a fair and impartial trial had been prejudiced by the appearance of certain news items in the public press of the city of Chicago on Saturday and Sunday, October 30 and 31. The court's denial of this motion is

assigned as error. The motion alleged that the defendant was mentioned and associated in the articles with Gus Amodeo, a notorious criminal and murderer, for whom a manhunt had been in progress during the trial; that the articles stated that the defendant acted in concert with Amodeo in committing the crimes of escape and burglary; that the defendant was otherwise mentioned so that he was unduly prejudiced and his trial a miscarriage of justice; and that the jurors had access to and read the articles. The supporting affidavit of counsel stated that the minds of the jurors were fixed and determined to a conclusion of the defendant's guilt, but failed to allege that any of the jurors read the articles in question. Six news items clipped from three of the leading daily and Sunday papers were attached to the motion, which pertained to the ambush slaying of Amodeo by the police on October 29. From these articles it appears that Amodeo had been hunted by the police since he escaped from jail on June 28, 1954; that the search was intensified after he allegedly shot and killed a police detective on October 21; that the woman who was to deliver an automobile to Amodeo on the night in question, advised the police of the plan and they were waiting for him when he came to claim the car; and that he was killed when he attempted to flee after he had been ordered to surrender. The defendant is mentioned only casually in two of the articles as the man who escaped from jail with Amodeo. The other accounts contain no reference to the defendant. Neither allusion to the robbery charge for which the defendant was being tried, nor mention that his trial was then in progress, was made in any article. The question presented here is whether the record contains a sufficient showing of prejudice to support the contention that the trial court abused its discretion in denying the motion.

Such motion for a mistrial is ordinarily addressed to the sound discretion of the court. (*People* v. *Mangano,* 354 Ill. 329.) The question to be determined by the trial judge

is whether the jurors, or any of them, have been influenced and prejudiced to such an extent that they would not, or could not, be fair and impartial. While the determination of the issue rests in the sound judicial discretion of the court, its exercise is subject to review and the abuse of that discretion will constitute reversible error. (*People* v. *Hryciuk,* 5 Ill.2d 176; *People* v. *Murawski,* 394 Ill. 236.) Before it can be said that the jurors have been influenced and prejudiced by the articles in question to the extent that they cannot be fair and impartial, facts and circumstances must appear from which it is reasonable to infer that one or more of them had read the newspaper accounts. (*People* v. *Rogers,* 303 Ill. 578.) In deciding the question presented each case must be determined on its own peculiar facts and circumstances. The statement of a juror that he read but was not influenced by an alleged prejudicial article is never conclusive, and the most controlling fact or circumstance is the character and nature of the statements themselves. (*People* v. *Hryciuk,* 5 Ill.2d 176.) Thus in *Hryciuk* the record affirmatively showed that each of the jurors actually read the particular article, and in *Murawski,* while the jurors were not questioned about it, there were facts and circumstances in the record which led this court to conclude that at least some of them must have read the newspaper account of the case on trial. In *People* v. *Kenzik,* 9 Ill.2d 204, the question was presented on a motion for new trial and three jurors testified that they read a newspaper account during the trial which stated that the defendant had a long criminal record and that the Federal Bureau of Investigation had named the defendant as one of its ten most wanted men. There was also a showing that the jurors talked about the article among themselves.

The record before us is devoid of any facts or circumstances from which it is reasonable to infer that any of the jurors read the newspaper accounts in question, except for the bare assertion of defense counsel in the

motion for mistrial. Such statement is insufficient to raise the inference that the jurors have seen or read the questioned article or articles. (*People* v. *Harrison,* 384 Ill. 201; *People* v. *Herbert,* 340 Ill. 320.) While the motion alleged that the jurors had access to and read the articles, yet such assertion is not made in the supporting affidavit. Upon this record neither the trial court, nor this court, would be justified in concluding that a juror or jurors read any of the articles. Without such showing there is no reasonable basis for the inference that they were influenced or prejudiced thereby. From competent evidence introduced at the trial prior to the publication of the newspaper accounts of Amodeo's death, the jurors were already aware of the escape. Other than supplying the name of Amodeo, unmentioned by the witnesses, the articles contained nothing concerning the defendant, or the escape, which the jurors did not already know. The fact that the newspaper accounts branded Amodeo as a wanted killer revealed nothing of his nature which was not divulged at the trial in the testimony concerning the escape. Therefore, had the jurors read the newspapers, it would be speculative to conclude that the reference to the defendant in the articles prejudiced them against him in any different degree than they were by the evidence of the escape. It is unfortunate that the defendant participated with Amodeo in the armed escape but, having done so, he must bear the consequences of his folly. If this prejudiced the jurors against him on the armed robbery charge, the result was brought about by his own acts. The court did not abuse its discretion in denying the motion for a mistrial.

We find no merit in defendant's contention that he was denied compulsory process to secure witnesses in his behalf, but we recognize that he had a right to such process. (Ill. Const. art. II, sec. 9; Ill. Rev. Stat. 1953, chap. 38, par. 735.) His defense was in the nature of an alibi and he named various persons who, according to his testimony,

were with him in a tavern at the time of the armed robbery. After he testified, his counsel asked for a conference with the court out of the presence of the jury. When the jury retired, counsel explained to the court that he interviewed many of the persons named by the defendant, but had found none who would corroborate defendant's alibi testimony; that some of the parties, including a man for whom defendant said he worked in the tavern, denied that they knew him; that it would be useless to subpoena them and damaging to defendant's case if any of them appeared. The court then told the defendant that he would cause subpoenas to issue for any witnesses whom defendant might desire, but advised him to seriously consider the advice of counsel. The court recessed until two o'clock that afternoon to give the defendant time to confer with his counsel and decide what should be done. When court resumed, counsel stated in defendant's presence, that he had interviewed the persons whose names had been suggested by defendant; that he found none who would support the defendant's alibi; that it would be unwise to subpoena them; and that he had elected to rest the defendant's case. Defendant now suggests that his counsel had no authority to surrender his rights in this manner. The record shows, however, that he was present and made no protest when his counsel announced this conclusion, reached only after a conference between the defendant, court and counsel, and deliberation by the defendant and counsel, all for the specific purpose of deciding this question. Counsel's decision, made in defendant's presence, is binding upon the defendant and he cannot now be heard to say that the action was taken or the decision reached against his wishes.

The trial, which lasted four days, was concluded on November 1, 1954, and on that date the jury returned its verdict of guilty. Defense counsel then stated that he desired to file motions for new trial and in arrest of judgment, and suggested that they be set for hearing on No-

vember 12. The court set the motions for hearing on the requested date. On November 12, defense counsel, who had filed written motions, appeared in court with the defendant and announced that he could not argue the motions on that date since he was engaged in the trial of another case. The court offered to hear the argument at that time, and declined to postpone it. Counsel decided not to argue the motions, and they were overruled by the court, to which ruling error is assigned. Where a defendant asks for a reasonable time to prepare and file a motion for a new trial, his request should ordinarily be granted. (*People* v. *Wilson*, 400 Ill. 603.) When the written motion is filed, the court can then determine whether it desires to hear argument, and where the trial is short and the issues few and simple, there is no abuse of discretion in passing on the motion for a new trial without argument. (*People* v. *DePompeis*, 410 Ill. 587; *People* v. *Vinci*, 369 Ill. 563; *People* v. *Moretti*, 330 Ill. 422.) If no reversible error is committed in the trial of a case, the defendant cannot be injured by a refusal of the trial court to hear or delay hearing on the motion. (*People* v. *Marx*, 291 Ill. 40.) In the case at bar, the court gave defense counsel reasonable opportunity to file and argue the post-trial motions, which were set for hearing on the date requested by him. He then declined to argue these motions, and no good reason appears why the court should have postponed argument. The motions were short, few legal questions were raised, and the court did not abuse its discretion in refusing to grant a continuance for argument on the motions. The defendant was neither prejudiced by the court's action, nor deprived of any right which would justify a reversal of the judgment.

Finally, defendant contends that the verdict is contrary to the evidence and that the evidence did not establish his guilt beyond a reasonable doubt. He was positively identified as one of the two armed robbers by a partner and

employee, who had ideal opportunity to observe him for almost 30 minutes while the robbery was in progress. The defendant caused a writ of *habeas corpus ad testificandum* to issue to compel the attendance of William Gartner, who had already pleaded guilty to the robbery in question and had been sentenced to the penitentiary. Against the advice of his counsel, defendant called Gartner as a witness, and he reluctantly testified that the defendant was the person who participated in the robbery with him. Against this conclusive demonstration of guilt there stands only the denial of the defendant that he was a party to the crime. It can fairly be said that the verdict of guilty was the only one possible under the circumstances and that the defendant was proved guilty beyond a reasonable doubt.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*