(No. 38717, 39548 cons.—)
THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* ANDREW HARPER *et al.,* Appellants.

*Opinion filed January 19, 1967.*

WARD, J., took no part.
UNDERWOOD and HOUSE, JJ., dissenting.

PHILIP M. BASVIC, STEPHEN A. SCHILLER, EMILE N. WANDERER, and RICHARD S. WEINBERG, of Chicago, appointed by the court, for appellants.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and PATRICK A. TUITE, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

John Holmes, Jr. and Andrew Harper were jointly indicted for the murder of Jake Allen. They were tried by a

jury, found guilty, and sentenced to death. Subsequent petitions for a post-conviction hearing were stricken. Defendants prosecute this consolidated appeal from the judgments of the circuit court of Cook County.

The deceased Jake Allen's body was found in an alley in Chicago on the morning of January 10, 1963. It appears that he had been killed by a bullet fired from a .22 caliber revolver. The two defendants were arrested that afternoon at about 2:45 P.M. and searched. The search revealed that Holmes had a loaded .22 caliber revolver, additional shells, and a watch and automobile keys belonging to Jake Allen. Defendant Harper had a revolver and the deceased's wallet.

They were taken to the police station and at 4:00 P.M. orally admitted their involvement in the murder. At about 8:00 P.M. that night defendants confessed to the murder to an assistant State's Attorney and a court reporter. The following morning the defendants signed the transcribed confessions and voluntarily testified before a coroner's inquest essentially repeating their prior confessions.

Their statements were to the effect that they asked the deceased for a ride shortly after midnight. At a stop sign the defendants pulled guns and took a watch and wallet from the victim. After the victim attempted to conceal some money he was ordered out of the car where he was shot. The confessions and the testimony at the inquest were admitted into evidence, after a hearing on defendants' motion to suppress.

On this appeal defendants contend that the motion to suppress was improperly denied; that the jury was improperly instructed; that the defendants were not advised of their constitutional right to counsel; that they were incompetently represented; and that their post-conviction petitions were improperly dismissed.

It appears from the hearing on the motion to suppress that defendants were interrogated after their arrest by police officers Mason, Walker, Lenz, Anderson and Denson.

Defendants testified that they were brutally beaten and forced to confess in order to avoid further brutality. They further testified that they reported the brutality to a doctor at the county jail and to a parole officer named Bright.

Officers Mason, Walker and Lenz testified denying all claims of brutality. The assistant State's Attorney and court reporter also testified that defendants were advised of their right to remain silent and they made no claim of brutality, but voluntarily gave their statements. The State did not call officer Anderson but his absence was explained as caused by serious illness. At the close of the first day's proceedings the State announced that they would present the testimony of officer Denson the following morning, whereupon the trial court announced that he had heard enough and denied the motion to suppress.

From the evidence it is apparent that the defendants were handcuffed to a chair and a radiator while being held for interrogation; that defendant Holmes was spitting blood prior to his confession and that defendants were not brought before a magistrate or court until their arraignment twenty-one days after their arrest. The testifying police officers maintained that Holmes advised them that the blood he expectorated was from an ulcer.

It is well established in Illinois that when the voluntary nature of a confession is brought into question by a motion to suppress, it is the duty of the State to produce all material witnesses connected with the taking of the statements or explain their absence. *People* v. *Wright,* 24 Ill.2d 88; *People* v. *Dale,* 20 Ill.2d 532; *People* v. *Sloss,* 412 Ill. 61; *cf. People* v. *Banks,* 26 Ill.2d 259.

Under this rule the failure of the State to produce officer Denson, who was admittedly an available material witness and was claimed to have been involved in coercive brutality, would require a suppression of the confessions. However the State points out that section 114—11(d) of the Code of Criminal Procedure, (Ill. Rev. Stat. 1963, chap.

38, par. 114—11(d)) provides that objection to the failure of the State to call all material witnesses on the issue of voluntariness of the confession must be made in the trial court. While no objection was made to the failure to call officer Denson, we are reluctant to say that the point was waived under the peculiar circumstances of this case. Here the State advised the court that it was prepared to call officer Denson the following morning, but the trial judge stated he had heard enough and denied the motion to suppress. In the face of this ruling it is understandable that counsel for the defense felt it useless to object to the failure to call further witnesses.

No medical evidence as to the cause of Holmes's bleeding was adduced, nor were the medical records of the county jail produced, although defendants testified that they complained of physical harm to a doctor in the county jail. In *People* v. *Thomlison*, 400 Ill. 555, 561, the court stated: "Since the burden of proving by a preponderance of the evidence that confession is voluntary is on the State, the appearance of the defendant in the condition he was in requires clear and convincing proof that this condition was not produced by the actions of the police officers, and that it had nothing whatever to do with a confession made later on."

It must also be noted that defendants were not brought before a judicial officer until twenty-one days after their arrest despite our statute requiring prompt presentment before a judicial officer. (Ill. Rev. Stat. 1965, chap. 38, par. 109—1.) We have not followed the Federal rule established in *Mc Nabb* v. *United States*, 318 U.S. 332, 87 L. Ed. 819 and *Mallory* v. *United States*, 354 U.S. 449, 1 L. Ed. 2d 1479, that unnecessary delay in presentment before a magistrate *per se* renders a confession inadmissible. We have repeatedly stated that the *McNabb-Mallory* rule does not rest on constitutional principles and does not of necessity apply to State criminal prosecutions. *People* v. *Novak*, 33 Ill.2d 343,

348; *People* v. *Kees*, 32 Ill.2d 299; *People* v. *Melquist*, 26 Ill.2d 22.

However we have recognized that unreasonable delay in presentment should be considered on the question of voluntariness of the confessions. *People* v. *Taylor*, 33 Ill.2d 417, 423; *People* v. *Hall*, 413 Ill. 615, 624.

In view of the long delay in presentment to a judicial officer, the admitted bleeding of one of the defendants, the lack of medical explanation for the bleeding, and the failure of the State to call all of the witnesses to the confessions, we conclude that the cause must be remanded for the purpose of a new hearing on the motion to suppress.

Defendants further argue that they were not properly advised of their rights prior to their confessions under the doctrine of *Escobedo* v. *Illinois*, 378 U.S. 478, 12 L. Ed. 2d 977. Since the trial here antedates both *Escobedo* and also *Miranda* v. *Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, those cases are not controlling. (*Johnson* v. *New Jersey*, 384 U.S. 719, 16 L. Ed. 2d 882.) From the record it is clear that defendants were not denied their constitutional rights to counsel under the rules expressed in *People* v. *Hartgraves*, 31 Ill.2d 375, *cert.* den. 380 U.S. 961, 14 L. Ed.2d 152, and their confessions need not be set aside on the ground of failure to advise them of their right to counsel.

We next consider the propriety of an instruction regarding attempted escape. The State offered evidence that the defendants attempted to escape from custody, and the court instructed the jury as follows: "The Court instructs the jury that an attempted escape from custody raises a presumption of guilt of the crime charged." We consider this instruction improper. We agree that it has been stated that an attempted escape is a "fact raising a presumption of guilt." (*People* v. *Gambino*, 12 Ill.2d 29; *People* v. *Talbe*, 321 Ill. 80; *People* v. *Duncan*, 261 Ill. 339.) These cases, however, involved a question of whether or not evidence of an escape or attempted escape was admissible. The actual

holding of the cases in which this language appears is that such evidence is admissible to be considered together with all other evidence. The State has cited no case, and we have found none, that approves an instruction in the language given here. The fact that certain language is appropriate in the context of an opinion does not necessarily justify its use in an instruction without further explanation.

The vice of the present instruction is that it appears to abolish the traditional presumption of innocence, (see *People* v. *Weinstein*, 35 Ill.2d 467; *People* v. *Benson*, 19 Ill.2d 50; *People* v. *Long*, 407 Ill. 210,) and singles out the fact of escape as sufficient in itself to create a *prima facie* case of guilt. While an escape or attempted escape may be evidence tending to prove guilt, it is not sufficient in itself to overcome the presumption of innocence. We, therefore, hold that the foregoing instruction should not have been given. In a case involving the death penalty it is imperative that the jury be properly instructed.

We have also examined defendants' contention that they were not adequately represented by counsel. From the entire record it appears that trial counsel acted competently under difficulty of continual disagreement with the defendants, and we do not believe that defendants were denied adequate representation. Since the case must be re-tried we see no purpose in discussing the trial tactics objected to by defendants.

The alleged incompetency of counsel was also the basis of defendants' post-conviction petitions. We have examined the allegation of these petitions and we believe that they were properly dismissed.

Because of the views we have expressed, the judgments must be reversed and the cause remanded for a new trial in accordance with the views expressed herein.

*Reversed and remanded.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.

Mr. JUSTICE UNDERWOOD, dissenting:

A majority of the members of this court have concluded that the 21-day delay between defendants' arrest and their appearance before a judicial officer, the admitted bleeding of defendant Holmes and the fact that the State did not call all of the witnesses to the confessions require a new hearing on the motion to suppress. With this conclusion I cannot agree.

The opinion of the court dwells at some length upon the fact that defendants were not taken before a judicial officer for 21 days following their arrest. As stated in that opinion, the *McNabb-Mallory* rule of the Federal courts has not been followed in Illinois although prolonged detention is considered as a factor in evaluating the voluntariness of confessions. But it is clear to me that such detention in order to cause or contribute to a confession, *must precede* the confession. Here, defendants orally admitted the murder within an hour and a quarter of their arrest, repeated their confessions to an assistant State's Attorney four hours later, signed written statements the following morning and voluntarily testified to the same effect at the coroner's inquest that same morning even though previously advised they need say nothing and warned that anything they testified to could later be used against them. That they were not taken before a judicial officer until 20 days later, while concededly a violation of the statute requiring prompt presentment, could not have affected the voluntariness of the prior confessions, since any possible inference that appearance before a judicial officer was delayed in order to permit bruises or other evidence of mistreatment to disappear is completely eliminated by the fact that defendants were at the inquest the day following the confessions.

The fact that the State did not call all of those who may be categorized as material witnesses poses the only question in the case which, to me, presents a serious problem, and it becomes so only because one of the defendants (Holmes)

was admittedly spitting blood. The defendants both testified they were beaten in the abdomen and midsection, and Harper testified his head was banged against the wall and his face slapped. Both stated they complained of their mistreatment to the doctor at the county jail, and Holmes testified he told the lockup keeper at the 11th and State station. Harper also testified he "went on sick call" as soon as he arrived at the county jail. The officers who testified denied any mistreatment and stated that Holmes explained the blood to them by saying he had a nervous stomach and a bad case of ulcers; Holmes in his testimony denied having ulcers and said that, while he often drank, he had no stomach trouble.

Apparently no effort was made by the State to call the doctor who attended inmates at the county jail nor to produce such records, if any, as may have been kept regarding complaints of illness by such inmates. The State points out the fact that the assistant State's Attorney testified he inquired of both defendants as to any complaints of mistreatment and that both said they had none. Holmes does not deny this, and Harper specifically admits saying he had been well treated but maintains he did so only because an officer was "giving him the eye". The State urges that since it is admitted that no mention of ill-being or mistreatment was made to the assistant State's Attorney or at the coroner's inquest the following day, it is unrealistic to assume that the alleged mistreatment occurred or that the complaints testified to were actually made, and that, had they been, defendants would have had the doctor and any records in court. While there is some logic in this argument the answer, in my judgment, lies elsewhere. This trial occurred in 1964 subsequent to the effective date of the Code of Criminal Procedure (Ill. Rev. Stat. 1963, chap. 38, par. 125—4). Section 114—11(d) specifically provides: "*Objection* to the failure of the State to call all material

witnesses on the issue of the voluntariness of the confession *must be made* in the trial court." (Emphasis added.) The purpose of this sentence, as explained in the Committee Comments appended thereto (*Smith-Hurd,* Ill. Annot. Stat., chap. 38, par. 114—11) was to clarify "a problem of considerable uncertainty in the Illinois cases," and it obviously was intended to permit subsequent complaint regarding a failure to call all material witnesses only if objection on this ground had been made in the trial court. The majority excuse defendants' failure to object here on the ground that it would have been useless to do so because the trial judge had indicated he had heard enough. But this assumes that the judge would have arbitrarily overruled such objection and that the State would have acquiesced in such ruling. This seems 'most unlikely, since the State and the judge undoubtedly relied on the mandatory statutory requirement that defendant must state his objection for consideration by the court, and the absence thereof would indicate defendant was not concerned about additional witnesses. I do not believe the trial court's denial of the motion to suppress was unwarranted, and it seems to me that this court's refusal to enforce the clear command of the statute in this case restores to this area of the law the precise uncertainty which it was the intent of the statute to eliminate.

The majority then proceeds to require a new trial in this case because of an erroneous instruction which told the jury that an attempted escape raised a presumption of guilt. I agree the instruction was improper and should not have been given, but the conclusion that a new trial must be granted is, I think, unwarranted. The evidence of an attempt to escape was clearly admissible and properly before the jury as the majority concedes. A new trial is required only if the faulty instruction can be said to have influenced the verdict. The defense presented no witnesses, and in this connection it is noteworthy that defendants were repre-

sented by separate appointed counsel, and had been given three different sets of attorneys largely because of their expressed dissatisfaction with the tactics and strategy of counsel. Their disagreement with trial counsel was no less. Illustrative of the situation is the fact that after the State rested defense counsel stated to the court that they had advised defendants it was advisable for them to testify, but defendants chose not to do so. Both defendants verified this, and stated they considered their counsel incompetent. Counsel then informed the court defendants had suggested the wallet found on Harper and identified as decedent's actually belonged to Romeo Berni; that counsel had consulted Berni who said the wallet was not his. Defendant Holmes told the court he wanted his parole agent subpoenaed as his witness. Counsel stated to the court that he had conferred with the parole agent and that both defense counsel agreed the parole agent should not be called. The implications are obvious.

It is particularly difficult in this case to believe that the verdict could have been other than guilty. Decedent's body, with a fragmented .22 bullet in the brain, was found about 7:50 A.M. At 2:45 the same day defendants were arrested and searched. A .22 pistol and extra shells were found upon Holmes together with decedent's watch and the keys to decedent's car. The search of Harper produced a revolver and decedent's wallet. Holmes showed the officers the car he had been driving—it was later identified as decedent's. The defendants confessed after an unusually brief period of questioning, their statements indicating they killed decedent because he attempted to conceal some of his money during their robbery of him. The following morning they voluntarily testified at a corner's inquest after being advised by that officer that they need not do so and that, if they did, their testimony might later be used against them. Their testimony was substantially the same as the confessions.

The proof in this case is as conclusive of guilt as any

coming before this court during my tenure, and I find no error of sufficient substance to require a new trial.

I would affirm in both cases.

Mr. JUSTICE HOUSE, also dissenting:

I join in the dissent of Mr. Justice Underwood. Additionally, I wish to again pay my respects to our rule that all material witnesses connected with the taking of a confession must be produced or their absence explained when the voluntariness of a confession is raised. Various members of the court have expressed their dissatisfaction with it, (see dissent in *People* v. *Dale,* 20 Ill.2d 532; special concurrence in *People* v. *Sims,* 21 Ill.2d 425,) and the legislature, by adoption of the Code of Criminal Procedure of 1963, has since seen fit to add the provision that objection must be made in the trial court. Ill. Rev. Stat. 1965, chap. 38, par. 114—11(d).

As was pointed out in my special concurrence in the *Sims* case, the rule was born as *obiter dicta* in *People* v. *Rogers,* 303 Ill. 578, where the trial judge had refused to admit the confession until all witnesses had been called. Since Sims there have been six or more cases (including *People* v. *Bullocks,* 23 Ill.2d 515, where the opinion was written under compulsion of the then majority by the writer of this dissent) which were reversed in whole or in part as a result of the rule. (See *e.g., People* v. *Wright,* 24 Ill.2d 88; *People* v. *Smith,* 25 Ill.2d 428.) The admission or refusal to admit a confession is a matter of competency and should be left to the sound discretion of the trial judge.

If this rule is sufficiently salutary to merit its retention, it is odd indeed that it has not been adopted and followed by other jurisdictions. My cursory research does not indicate that a single State is following it, and none has been called to our attention. The stringent safeguards and restrictions imposed upon the taking and admission of confessions by the Supreme Court of the United States in such cases as

*Escobedo* and *Miranda* seem more than ample to me and we are not justified in further adding to the burden of law enforcement agencies.

The test of time shows that the rule has not lived up to its billing as a useful tool to the trial courts, (*People* v. *Jennings,* 11 Ill.2d 610,) but, rather, its application has definitely become mechanical and, too often, has resulted in unwarranted reversals with a consequent further burdening of the trial court dockets. It is my hope that my colleagues will carefully scrutinize the rule under existing conditions and expunge it in the next case which furnishes a proper vehicle.