THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* EDWARDINE MARKIEWICZ, Defendant-Appellee.

First District (3rd Division) No. 61982

Opinion filed May 6, 1976.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Linda Ann Miller, and Joan S. Cherry, Assistant State's Attorneys, of counsel), for the People.

Gerald W. Getty, of Chicago, for appellee.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

The issue raised by the State in this appeal is whether the trial court erred in granting the defendant's motion to suppress statements inculpating herself in the murder of her husband and mother.

Her husband, Steven Markiewicz, and her mother, Margaret Tomasik, were shot to death on October 30, 1973. Around noon that day the police arrived at the defendant's home and found her unconscious from an overdose of tranquilizers, sleeping pills and aspirin. The policemen placed her on a stretcher and took her to the emergency room of the South Chicago Hospital. Upon arrival she was in a coma and near death. Doctors pumped her stomach and gave her an intravenous fluid.

Officer Thomas Banks, who had taken her to the hospital, testified at the hearing on the motion to suppress that he heard her respond to a question asked by one of the doctors, and that she was conscious when he saw her being taken to an intensive care unit on a cart. The State's only other witness, Officer Harold Huffman, stated that he arrived at the hospital around 2 p.m. and asked a Dr. Alem if he could speak with the defendant. Huffman testified that the doctor refused to let him because the doctor felt that, although medically able to speak, the defendant might say something that would jeopardize her legal interests. Soon thereafter Huffman received permission from the hospital's administrative office to interrogate the defendant. He and Banks and one other policeman and a policewoman went to the intensive care unit. A nurse asked the defendant if she would mind talking to the four officers. She had no objection and was told by the officers that they were investigating the death of her husband and mother. Huffman testified that she was advised of her

constitutional rights and was specifically asked whether she understood that she had a right to remain silent and whether she had heard and understood what had been said. Each time she responded affirmatively. The next day Huffman returned and told the defendant that there was an assistant State's attorney with him who wanted to ask her some questions. She was again informed of her constitutional rights, gave an oral statement, and consented to repeat the statement in writing. The latter statement was made in the presence of Huffman, his police partner, the assistant State's Attorney and a court reporter. The assistant State's Attorney's questions and the defendant's answers came to nine pages; at the very end of the 15-minute interrogation, she requested the presence of an attorney.

Dr. Bernard J. Kirk, one of the defendant's two witnesses, stated that he examined her on November 7, 1973, and that, before doing so, he had reviewed her hospital records. These indicated, he stated, that she was admitted to the hospital near death in a coma and that she began to fully come out of that condition late that night. The witness explained that a patient in a coma might give what appeared to be an intelligent answer to a question, but that the person might still have been unable to clearly understand and appreciate the question because of the deep lethargic and almost unconscious state characteristic of even less severe comatose conditions. Further, he noted that laboratory tests showed that on October 30 and October 31 the defendant had abnormally high levels of secobarbital, phenobarbital and salicylates in her blood. Her white blood count on the 30th was 17,000 (at least twice the normal) and 10,000 on the 31st which, along with the high level of enzymes in her blood on those dates, indicated that the defendant was seriously ill with some infection when she was admitted into the hospital. Dr. Kirk concluded that these conditions undoubtedly impaired the defendant's judgment and that she would have been unable to understand the constitutional explanations given her on October 30 and October 31.

Dr. Marvin Siporyn, a psychiatrist, testified that he examined the defendant on February 15, 1974, and reviewed her hospital records at that time. These showed, he stated, that the defendant was in a coma while in the emergency room, that she was responding to no stimuli, and that she was cold and clammy and breathing rapidly but shallowly. He emphasized that the defendant's records indicated that her potassium level was below normal when admitted and even lower on November 1, and that the low potassium level impaired her judgment and perception because it reduced the level and rate of electrical impulses transmitted across nerve ends. He conceded that, because the hospital had moved the defendant to the intensive care unit from the emergency room, there was a presumption that she was no longer comatose at that time, but he

concluded nevertheless that the medical data, and especially the low potassium levels, indicated that the defendant could not have knowingly and intelligently waived her constitutional rights on either October 30 or October 31.

The trial court sustained the defendant's motion to suppress the two oral statements and the oral statement that was reduced to writing on the ground that her physiological condition prevented her from knowingly and intelligently waiving her constitutional rights. The sole contention raised by the People on appeal is that the court's order was contrary to the manifest weight of the evidence.

■■ In *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, it was held that a person in custody must be warned prior to interrogation that he has a right to remain silent, that the State may use anything he says against him in court, that he has a right to consult a lawyer and to have the lawyer present during interrogation and that, if he is unable to do so himself, the State will provide him with counsel. Where a statement is taken without an attorney being present a heavy burden rests on the prosecution to prove that a defendant knowingly and intelligently waived his privilege against self-incrimination and his right to counsel. *(People v. Johnson* (1969), 112 Ill. App. 2d 148, 251 N.E.2d 393.) The determination as to whether there was a knowing and intelligent waiver must rest upon the particular facts and circumstances of each case. *(People v. Simmons* (1975), 60 Ill. 2d 173, 326 N.E.2d 383.) The trial court's decision on this issue will be overturned only when it is against the manifest weight of the evidence. *(People v. Torres* (1973), 54 Ill. 2d 384, 297 N.E.2d 142; *People v. Johnson.)* Appellate courts have consistently followed this rule when asked to review a trial court's determination of whether a defendant, allegedly influenced by drugs, gave statements in conformance with the *Miranda* standards. *People v. Miller* (1974), 19 Ill. App. 3d 103, 311 N.E.2d 179; *People v. Wolfram* (1973), 12 Ill. App. 3d 262, 298 N.E.2d 188; *People v. Pote* (1972), 5 Ill. App. 3d 856, 284 N.E.2d 366.

■■■ Nothing in this case convinces us that the trial court committed manifest error in judging the credibility of the witnesses and evaluating the weight of their testimony. The State did not bring forward any expert opinion that the defendant's judgment remained unimpaired and her mind lucid despite her being near death and in a coma when brought to the hospital, the high level of drugs in her blood and the other abnormal conditions noted by the doctor-witnesses. The State merely attempted to rebut this expert medical testimony by having two police officers testify that, to them, the defendant's answers to questions asked her indicated that her judgment was normal and unaffected by the massive amount of drugs she had taken. Admittedly, the trial court has no obligation to

adopt, in whole or in part, the experts' medical conclusions. The judge, rather than the experts, was the trier of fact. *(United States v. Makris* (1973), 483 F.2d 1082; *People v. Horton* (1975), 29 Ill. App. 3d 704, 331 N.E.2d 390; *People v. Burress* (1971), 1 Ill. App. 3d 17, 272 N.E.2d 390.) But the court could have reasonably concluded that the policemen's testimony was insufficient to overcome the medical testimony. In particular, nothing the police officers said contradicted Dr. Kirk's statement that a person coming out of a coma might appear to give intelligent answers to questions but still might be suffering from a severe inability to appreciate thoroughly the nature of the questions asked and the consequences of the answers given.

The trial court's ruling was not against the manifest weight of the evidence and it will be affirmed.

Affirmed.

McNAMARA and McGLOON, JJ., concur.