THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DANIEL H. MOATS, Defendant-Appellant.

Third District    No. 78-468

Opinion filed October 15, 1980.

Robert Agostinelli and Peter Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.

Carl E. Hawkinson, State's Attorney, of Galesburg (Thomas R. Lamont, Donald L. Hays, and John X. Breslin, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Defendant Daniel H. Moats appeals from his conviction, following a jury trial, for the offense of theft. Defendant was charged, under section 16—1(d) of the Criminal Code (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(d)), with receiving stolen property, and, following his conviction, he was sentenced to 2½ to 7½ years' imprisonment. On this appeal he raises three issues: (1) whether, on a defense motion to suppress, the State met its burden of showing that certain injuries sustained by Moats while in custody were not the result of police brutality; (2) whether the court erred in instructing the jury; and (3) whether Moats was denied his right to effective counsel when his retained counsel waived transcription of final arguments.

The record reveals that Moats was charged with theft (over $150), in that he knowingly obtained control over a stolen stereo, with the intent to permanently deprive the owner of its use and benefit, under circumstances that would reasonably induce him to believe that the stereo was stolen. (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(d).) The charge grew out of a November 1977 burglary at the Port and Starboard Inn in Galesburg. Two days after the burglary, a stereo taken during the burglary was turned over to police by a person who indicated that he had purchased it from defendant Moats. Thereafter, the police conducted a search of Moats' residence and various items connected with the burglary were found in Moats' garbage can. Moats was arrested. While in custody, according to the State's evidence, the defendant Moats gave two versions leading to his possession of the stereo. The first version given by Moats was that he had been sold the stereo by a person named Buzz. The second version, contained in a written statement, was that he, Moats, had been called to the site of the burglary by persons who told him they needed help starting their truck. Moats went to the Inn, where he helped those persons start their stalled truck. While there he observed them carrying various items out of the Inn. He was given various items, including the stereo, for his help. The State's other evidence came from Rick Morris, who testified that he had, on the day following the burglary, traded his 1964 automobile to Moats in exchange for Moats' stereo, later identified as the one taken in the burglary.

Following the State's case, the defendant Moats took the stand and testified that he had purchased the stereo from one Buzz Efferson and that he did not know that the stereo had been stolen. He also stated that on the same day he got it from Efferson he traded it to Morris for the automobile. Moats also testified that the written statement given to police, which contained the incriminating statements, was involuntarily given and was obtained only by means of police abuse. The substance of his testimony at trial was similar to that presented at a pretrial hearing on the motion of the defense to suppress the statement. The basis for that motion to suppress was the defense allegation that the statement had been obtained through the use of police brutality. We turn, at this time, to the evidence presented on the question of the voluntariness of the statement.

The defendant's testimony concerning his confinement after arrest indicated that he was not given his *Miranda* warnings, although questioned by an Officer Foster the day following his arrest. Moats stated that Foster told him the police were willing to make a deal with him if he would cooperate. According to Moats, he tried to do so and gave Foster the location of two or three houses where he believed stolen property was located. Following this 30- to 45-minute interview, Moats was taken back to his cell, where he requested medication to help him breathe. He requested cough syrup and an antihistamine.

The next morning another officer, Deputy McKeown, had another interview with Moats in a small office at the station. According to Moats, no *Miranda* warnings preceded this interview. McKeown requested defendant's help as an informant and told him that he could get his medication and see his family if he would cooperate by writing a statement about the burglary. Moats then prepared a four-page statement, which he later testified was a false statement but one that he knew McKeown wanted to receive. Following his preparation of the statement, Moats refused to sign it. According to Moats, he and McKeown then had an argument, and McKeown slammed him, while Moats was handcuffed, against the wall and then beat him with a billy stick five times on the head and back of the neck. Moats thereafter signed the statement. Moats also testified that during the beating an Officer Johnson came into the room and told McKeown he could not beat the defendant. According to Moats' testimony, he was returned to his cell after signing the statement. He stated that he was afraid to tell the jailer, who returned him to his cell, about the beating. Moats' next memory was waking up in St. Mary's Hospital emergency room bloody and throwing up, under medication and care. McKeown was there also, and, according to Moats, told him to keep his mouth shut. Moats was later transferred to St. Francis Hospital. Such was the defendant Moats' version of his treatment at the hands of the police.

The State's evidence pertaining to the condition of the defendant Moats and the interrogations which occurred directly contradicted Moats' testimony. Both McKeown and Johnson testified that no force or coercion was used against Moats and that *Miranda* warnings were given each time. McKeown testified that Moats' statements were voluntarily made and voluntarily signed, that Moats never complained of illness during the interrogation, and that he never threatened Moats at the emergency room. McKeown also testified that on the night Moats was arrested, Moats told him that he had a prior neck injury. Officer Johnson testified that he never saw McKeown strike the defendant and that he too had been told by Moats that he had injured his neck while in the service.

■■ Two other witnesses testified for the State concerning Moats' physical condition. Robert Hroziencik, the jailer, testified that he returned the defendant to his cell following the interview with McKeown on November 25. He stated that Moats made no complaint about his physical condition, nor did he notice any blood or bumps on Moats at that time. He testified that he heard no screams or sounds indicating a struggle during the interrogation of Moats by McKeown. Hroziencik did testify that approximately 20 minutes after Moats had been returned to his cell lunch was served. When Hroziencik came to Moats' cell, he found Moats lying face down on the floor, with a small amount of blood on the floor near Moats' head. An ambulance was called and Moats was taken to the emergency room. Neither McKeown, Johnson or Hroziencik had any theory as to how the injury to Moats occurred. The State's other witness, Janet Peterson, was working in the emergency room of St. Mary's Hospital on the night Moats was brought in for treatment. She testified that Moats told her that he was standing in his cell when he twisted and fell on his face. He also indicated to her that he had suffered an injury to his cervical spine in the service. That was the substance of the State's evidence with regard to the injuries to Moats at the police station. Some of the evidence was presented at the motion to suppress, which was denied, and other evidence at the trial. On this appeal we consider all the testimony produced in reviewing the motion to suppress. (*People v. Wade* (1979), 71 Ill. App. 3d 1013, 1017, 389 N.E.2d 1230.) The jury returned a verdict of guilty, and Moats was sentenced to 2½ to 7½ years' imprisonment on the theft conviction.

■■ The first issue raised by the defense concerns the correctness of the court's denial of Moats' motion to suppress the incriminating statements. The defense argues that the State failed to meet its burden of showing that the injuries suffered by the defendant in custody were not the result of police brutality. It is argued that the lack of any viable medical explanation for the injuries, other than police abuse, precludes a finding that the confession was voluntary. The law in this area is well established.

"The constitutional test for the admission of a confession in evidence is whether the confession was made freely, voluntarily and without compulsion or inducement of any sort. A confession obtained by force or brutality is not voluntary and is inadmissible." (*People v. Davis* (1966), 35 Ill. 2d 202, 205, 220 N.E.2d 222.)

The court went on in *Davis* to state that "where an accused suffered injuries while in police custody, clear and convincing proof is required to establish that the injuries were not the result of police brutality." (35 Ill. 2d 202, 206.) It is also established that the trial court's findings with regard to the question of voluntariness will not be disturbed unless found to be contrary to the manifest weight of the evidence. (*People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601.) In the instant case, the trial court found that the statements were made voluntarily and it denied the motion to suppress of the defense. Implicit in that finding and ruling is the conclusion that the State met its burden of proof by clear and convincing evidence that the injuries to Moats were not the result of police brutality. We find support for the court's findings and ruling in the record and do not find them to be contrary to the manifest weight of the evidence.

It is undisputed that the defendant Moats was injured while in police custody and that he required hospitalization to recuperate from those injuries. The record is unclear as to the exact nature and extent of the injuries suffered by Moats and also as to the treatment he received for them. No medical evidence was presented by either side concerning the injuries. However, there was sufficient evidence indicating that the injuries Moats suffered were the result of a fall in his cell, perhaps in part connected to a prior neck injury, and not the result of police brutality. Two officers testified that Moats had mentioned to them a prior injury sustained while in the service. More significant, given the absence of any suggestion of bias or prejudice by her, is the testimony of Janet Peterson, a worker at St. Mary's Hospital emergency room. She testified that Moats told her of the prior neck injury and, also, that he had injured himself when he fell in his cell. This admission by Moats, testified to by a witness without established or suggested bias or prejudice, is the key evidence supporting the State's case that the injuries were not suffered as a result of brutality. Without it the State's case would have lacked an explanation for the injuries, and it would have been difficult for it to have satisfied its burden of proof. (See *People v. Davis* (1966), 35 Ill. 2d 202, 207; *People v. Alexander* (1968), 96 Ill. App. 2d 113, 238 N.E.2d 168.) In addition to Janet Peterson's testimony, there is that of the jailer, who stated that Moats did not appear injured after the interrogation by McKeown, and also the denials of abuse by the two officers involved in the interrogation. Given all the evidence, we find that the court did not err in denying the motion to suppress the statement.

■■ The support the defense finds in the cases is not controlling in the instant case. In *People v. Davis*, wherein the Illinois Supreme Court reversed a conviction because of the State's failure to prove absence of brutality, the evidence of abuse was corroborated by complaints made shortly after the beating and by evidence from other inmates who heard screams and saw the defendant leave the interrogation hurt. The court noted that a police suggestion that the injuries to the defendant were self-inflicted was no more than mere supposition without any support in the evidence. It found no other explanation other than police brutality. (35 Ill. 2d 202, 206-07.) In the case at bar no corroborative evidence supported the defendant's charges of abuse, and other evidence, including an admission by the defendant, indicated that the injuries resulted from a fall in the cell. The defense on this appeal suggests that the State's evidence must be found insufficient for its failure to provide a medical explanation for the injuries, and reliance is placed upon *People v. Harper* (1967), 36 Ill. 2d 398, 223 N.E.2d 841. In that case, the Illinois Supreme Court reversed and remanded for a new hearing on the motion to suppress because of irregularities surrounding the confession. These irregularities included a long delay in presentment, the bleeding of one of the defendants prior to the interrogation, the lack of medical explanation for the bleeding, and the failure of the State to call all of the witnesses to the confession. (36 Ill. 2d 398, 403.) As to the lack of medical explanation, the court noted that the State did not produce medical records of the county jail, although the defendants testified that they complained of harm to the doctor in the county jail facility. *Harper* does not stand for a requirement that the State produce a medical explanation in all cases of alleged brutality. The State, to meet its burden in cases where a prisoner is injured in custody, must show that brutality was not the cause of the injuries, and such proof will usually require some reasonable explanation of how the injuries were sustained. As indicated, mere denials of abuse by the police, without other explanation for the injuries, have been found insufficient. In *Harper* the only explanation for the defendant's bleeding was the officer's unsupported statement that the defendant had an ulcer. Also, in that case, the State had available to it, but did not produce, the medical records of the county jail concerning the injuries. In the instant case, an explanation for the injuries was put forth by the State in the form of Moats' admission to Janet Peterson that he had fallen in his cell. Having put forth an acceptable explanation, the admission of a fall in the cell, along with the other evidence indicating a lack of police abuse, the State was not further obligated to attempt to obtain Moats' medical records from the hospitals where he was treated. We would note, in passing, that the State may well have encountered problems had they attempted to obtain those records. (See Ill. Rev. Stat. 1977, ch. 51, par. 5.1.) Had the hospital records

disclosed that the defendant's injuries were not of a nature as would have been incurred in a fall to the floor, but were consistent with being hit by a club over the head, then the defense should have produced them in the defendant's behalf. The State met its burden of showing a lack of police brutality and there was no error in the admission of the statement.

Next we turn to the alleged error in the instructions. Defendant Moats, as earlier noted, was charged with theft under section 16—1(d) of the Criminal Code (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(d)), which is the receiving stolen property provision of the theft statute. It states:

"Theft. A person commits theft when he knowingly:

\* \* \*

(d) Obtains control over stolen property knowing the property to have been stolen by another or under such circumstances as would reasonably induce him to believe that the property was stolen, and

(1) Intends to deprive the owner permanently of the use or benefit of the property; or

(2) Knowingly uses, conceals or abandons the property in such manner as to deprive the owner permanently of such use or benefit; or

(3) Uses, conceals, or abandons the property knowing such use, concealment or abandonment probably will deprive the owner permanently of such use or benefit."

The jury was given an issues instruction which informed them that in order for them to convict the defendant of theft they would have to find (1) that Moats knowingly obtained control over the stereo and (2) that he knew the stereo had been stolen by another person. The jury was also instructed, over defense objection, that they could infer that Moats obtained possession by theft if he had "exclusive possession of recently stolen property, and there was no reasonable explanation of his possession." (IPI Criminal No. 13.21.) The defense argues that it was error for the latter instruction to have been given, since the defendant was charged with receiving stolen property and not with stealing it. Under the section of the theft statute under which Moats was charged, knowledge that the property was stolen must be proven by the State. The error with the instruction is that it informs the jury that a conviction may be returned solely upon the basis of recent, exclusive possession of stolen property which is not reasonably explained, and thereby excludes the knowledge element for consideration. Under IPI Criminal No. 13.21 a jury is permitted to find a defendant guilty of theft even though they may not be satisfied that he knew the property was stolen at the time he obtained control over it. We agree with the defense that the giving of this instruction was improper and that the defendant was prejudiced by it.

■■ ■ It has been established that while proof of recent, exclusive and

unexplained possession of stolen property is sufficient to prove a wrongful taking by the possessor, such possession is insufficient in itself to convict one of the crime of receiving stolen property. (*People v. DeFilippis* (1966), 34 Ill. 2d 129, 136, 214 N.E.2d 897; *People v. Grizzle* (1942), 381 Ill. 278, 44 N.E.2d 917; *People v. Gray* (1978), 61 Ill. App. 3d 243, 246, 377 N.E.2d 1311.) The reason behind the distinctive treatment is that in the latter form of theft, receiving stolen property, knowledge that the property was stolen is an essential element. In the *Grizzle* case, the Illinois Supreme Court found error in the giving of an instruction essentially similar to the one now adopted as IPI Criminal No. 13.21 in a case where the defendant was charged both with larceny and with receiving stolen property. The court held that it was error to give the instruction without limiting it to the larceny count. (381 Ill. 278, 288.) See *People v. Prall* (1924), 314 Ill. 518, 145 N.E. 610, in which giving such instruction was expressly condemned in a case where the defendant was charged with receiving stolen property. The reasoning in both *Grizzle* and *Prall* is that the instruction on an inference of guilt from recent possession permits the jury to infer guilt without also finding the requisite knowledge which must be proven for a conviction of receiving stolen property. In the instant case, there is no way of knowing whether the jury followed the issues instruction, informing them that they must find knowledge on the defendant's part, or whether they utilized the inference permitted them under IPI Criminal No. 13.21, which was erroneously given. In these circumstances, and given that the defendant's main defense was a lack of knowledge that the property was stolen, we find that the giving of the instruction was prejudicial and requires a remandment for a new trial.

Neither of the State's cases cited for using the instruction involved the charge of receiving stolen property, and while *Grizzle* was decided prior to use of IPI form instructions, the instruction used therein, as already noted, was essentially similar to IPI No. 13.21. In addition, despite the consolidation of theft offenses under one section of the Criminal Code (Ill. Rev. Stat. 1977, ch. 38, par. 16—1), the State, proceeding under subsection (d), must still prove knowledge in order to obtain a conviction. An instruction, in such a proceeding, which informs the jury otherwise is erroneous.

Given our reversal on the instruction issue, and the remandment, there is no purpose in our addressing the final issue raised: whether the defendant received ineffective assistance of counsel when his privately retained trial counsel waived the transcription of the final arguments.

The decision of the Circuit Court of Knox County is reversed and remanded for a new trial.

Reversed and remanded for a new trial.

STOUDER and BARRY, JJ., concur.