THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TEDDY W. ELLISON, Defendant-Appellant.

Second District No. 2—83—0304

Opinion filed June 20, 1984.—Modified on denial of rehearing August 20, 1984.

G. Joseph Weller, Judith M. Brawka, and Kyle Wesendorf, all of State Appellate Defender's Office, of Elgin, for appellant.

Robert Morrow, State's Attorney, of Geneva (Phyllis J. Perko and Andrea Becker, both of State's Attorneys Appellate Service Commission, of

counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

Defendant, Teddy W. Ellison, was charged by indictment with the offenses of burglary, theft and possession of burglary tools. After a jury trial in the circuit court of Kane County he was found guilty of the burglary (Ill. Rev. Stat, 1981, ch. 38, par. 19—1(a)) and theft over $300 (Ill. Rev. Stat. 1981, ch. 38, par. 16—1). He was sentenced to two concurrent four-year terms of imprisonment.

On appeal defendant presents three issues for review. First, he contends the trial court erred in refusing to suppress his statements to the police because he did not knowingly and intelligently waive his *Miranda* rights prior to making inculpatory statements. Defendant contends the finding that he had waived his rights was against the manifest weight of the evidence. Secondly, he contends that evidence of the theft of a CB radio was improperly admitted at trial. Defendant's final contention concerns the question of whether or not the jury was properly instructed.

The record shows that defendant filed a motion to suppress his statements to the police, urging that he did not knowingly and intelligently waive his *Miranda* rights. The motion, filed on November 10, 1982, was denied after a hearing. At the hearing, Arthur Weber, an Algonquin police sergeant, testified that he was on patrol on September 27, 1982, and responded to a call of a possible theft from a model home. He reported to the scene and spoke with David Trotter, who lived next door to the model home. Trotter told him that he had seen two men carry a stove and dishwasher from the home and load them into a white Ford station wagon with blue doors. Weber then heard, over his police radio, that Officer Svenningsen had located a station wagon matching that description.

Officer Svenningsen testified that when she approached the station wagon the defendant was sitting alone in the car and there were large appliances in the back. Defendant told her that the car belonged to his wife and he had been helping a friend move. When Sergeant Weber arrived on the scene, defendant repeated this statement to him and Weber arrested the defendant.

Defendant was informed of his rights under *Miranda* at the police station by Office Svenningsen. She gave defendant a copy of the *Miranda* form to read along with her as she read another form. This took above five minutes, and defendant then signed the waiver form. Officer Svenningsen testified that she spoke with defendant for about one-half hour, but she did not ask him any questions pertaining to the

charges he had been arrested for.

Lieutenant Steven Schinkel came to the station shortly after 1 a.m. to interview the defendant. He reread the rights from the *Miranda* form to defendant, and the defendant told him that he knew his rights because he had "been arrested several times before." The defendant then told Lieutenant Schinkel that a friend of his by the name of Randy had come by his apartment and they had gone fishing. Randy told defendant he wanted to get some property from a house and told him how to get to this house. When they got there Randy went around the back and opened the garage door and asked defendant for some help carrying some of the property. Lieutenant Schinkel testified that the defendant's speech was coherent and his answers and statements were not unusual. The defendant did not request an attorney and did not ever refuse to answer a question. Defendant told Schinkel that he was just doing this as a favor for Randy. He admitted that both he and Randy had taken the dishwasher and stove and placed them in the back of the station wagon, and were taking them to Randy's apartment.

Lieutenant Schinkel returned the next morning, sat in the back of a squad car with defendant and advised him of his rights again prior to conversing with him. Lieutenant Schinkel tried to get some information about the defendant's friend, Randy. Defendant told Lieutenant Schinkel that he and Randy had been together the night before and were in his car driving around looking for a house they could get some property from. They entered the house in question through a basement window, went upstairs, unlatched the garage door, opened the garage and removed the dishwasher and stove. Defendant told Schinkel he had removed these items despite the fact that neither he nor his friend, Randy, knew the people there at the house. He said he was not going to get any money from this, he was just trying to help Randy out. Defendant appeared to be coherent. Defendant never requested an attorney.

The psychologist on staff at the Kane County Diagnostic Center, Roger Hughes, testified on behalf of the defendant. He indicated that the results of six hours of his testing of defendant showed defendant was illiterate. He determined the defendant's IQ to be 77, which indicates borderline mild mental retardation. Thus, the defendant would score better than only 2% of the population on these tests. Hughes testified that the defendant's verbal language disability was likely developmental in nature and that he had likely never been motivated to learn verbal material.

With regard to the *Miranda* rights form read and shown to the

defendant, Hughes testified that defendant "definitely" could not read the form for himself and understand it. He indicated that if the form were read to him there would be parts that he could understand but that he could not understand it in its entirety. Specifically, he testified, defendant would likely not know what the word "appointed" means, or what the phrase "exercise these rights" means. Although someone may be able to explain the terms to him, it would be a very slow, arduous process in order for him to "get" the meaning of the words. He would not be able to derive the meaning of the words himself. On the other hand, Hughes testified, defendant was fit to cooperate with counsel and could understand the proceedings of the trial in a general way.

The defendant testified on his own behalf. He identified the *Miranda* rights form and could vaguely remember that he had signed it. He testified that when he and Lieutenant Schinkel were in the back of the car on the way to the bond hearing Schinkel told him that if he did not talk to him Schinkel would make sure he was not released on bond. When defendant was presented with the *Miranda* rights form he was able to read only the short and simple words on the form.

Defendant's motion to suppress the statements was denied and the court ruled that there was no coercion by the police.

At trial, on February 15, 1983, the defense filed a motion *in limine* to preclude the testimony of David Trotter, the individual living next door to the model home who had initially called the police. Trotter was expected to testify regarding the theft of his CB radio from his car parked next door to the model home. He discovered the theft the morning after defendant was arrested. The prosecutor argued that the evidence was relevant to show the absence of mistake. The motion was denied, and Trotter was allowed to testify.

Trotter testified at trial that he saw two men coming out of the garage of an uncompleted home next door to his house. He saw the men carrying appliances and loading them into a car parked in front of the house, but he could not see their faces. After they tied down the back door of the station wagon, the two men drove away slowly with their lights off. The next morning Trotter found that his car had been broken into and his CB radio had been cut out of the dashboard. Sergeant Weber and Officer Svenningsen testified and provided, essentially, the same details as they did at the suppression hearing.

Lieutenant Schinkel testified that the defendant had told him he stayed in the car while Randy went into the house. Schinkel recalled that defendant was ill in the car when he drove defendant to Elgin

for the bond hearing and that defendant mentioned that he had been drinking. Following testimony as to the value of the stove and dishwasher, the prosecution rested.

For the defense, the defendant's ex-wife testified that the defendant and his friend, Randy, left the house around 8 p.m. to go fishing. Roger Hughes, the psychologist, testified to essentially the same facts as he had related at the suppression hearing.

The defendant testified on his own behalf. He indicated that he and Randy left the house at either 7, 8 or 9 p.m. They fished, drank beer and smoked cigarettes until dark. Randy told defendant where they could go so they could pick some things up. They went to the house and defendant helped Randy carry a stove and something else in a box and put it in the back of the car. Defendant stated he did not go into the house or into the garage. While they were at the house Randy left and got something somewhere else. On the way back home Randy gave defendant the CB radio for helping him. When defendant got to his house and the police car drove up, Randy ran away. Defendant said he did not run away because he had no reason to run. Defendant stated he was not guilty of the offenses and he denied having told Lieutenant Schinkel that he had planned the burglary or that he knew how Randy got into the house.

The jury returned a verdict of guilty of burglary and theft and not guilty of possession of burglary tools. Defendant's post-trial motion was denied. The court imposed terms of four years' imprisonment on each charge, to be served concurrently.

The defendant's first contention on appeal is that the trial court erred in finding that defendant had knowingly and intelligently waived his *Miranda* rights and in refusing to suppress his statements to the police. Thus, he urges, his convictions should be reversed.

Defendant contends that the factors which must be taken into consideration here are his low intelligence score and his unfamiliarity with written language. He also points out that the atmosphere in which a defendant waives his rights can be coercive. *People v. Stone* (1978), 61 Ill. App. 3d 654, 378 N.E.2d 263.

The thrust of defendant's contention turns on the testimony from Roger Hughes, the psychologist. Hughes concluded that, given the circumstances under which defendant made his waiver, he was incapable of understanding the meaning and appreciating the significance of what he had done. As previously indicated, Hughes found that the defendant was illiterate and had an IQ of 77, which indicated borderline mild retardation. He attributed the defendant's low abilities to a verbal language disability. Hughes testified that the defendant could

not have understood the terms used in the *Miranda* form and he would have to be taught what the words meant in order to fully understand the meaning of the words. He also indicated that repeated exposure to the words alone would be an insufficient way for defendant to learn what they meant.

Defendant also urges that the entire procedure of signing the *Miranda* card took approximately five minutes, but more time would be necessary for a complete explanation. The defendant contends that the State failed to rebut the Hughes testimony. He urges that the officers who testified about defendant's arrest were mistaken in their opinions of his abilities and intelligence. Further, he urges, their observations could be viewed as consistent with Hughes' conclusions.

■ We believe the trial court was in a better position than this court to evaluate the defendant's ability to understand his rights. After a hearing on the motion to suppress, the trial court's ruling will not be disturbed unless it is against the manifest weight of the evidence. (*People v. Higgins* (1972), 50 Ill. 2d 221, 278 N.E.2d 68.) The test for admissibility of a confession is whether it was made freely, voluntarily and without compulsion. (*People v. Avery* (1980), 88 Ill. App. 3d 771, 410 N.E.2d 1093, 1096.) The burden of proving the voluntariness of a confession is on the State (*People v. Jackson* (1968), 41 Ill. 2d 102, 242 N.E.2d 160), and this must be proved by a preponderance of the evidence. *People v. Harper* (1967), 36 Ill. 2d 398, 223 N.E.2d 841.

■ Evidence of limited intellectual capacity, standing alone, does not indicate that a defendant is incapable of waiving his constitutional rights and making a confession. (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677, 685.) Such evidence is but one of the issues to be considered in reviewing the totality of the circumstances under which a confession is made. *People v. Turner* (1973), 56 Ill. 2d 201, 206, 306 N.E.2d 27.

■ Further, it should be noted that the police are not required, as a prerequisite to accepting a waiver, to conduct a mental examination of the accused with a view to ascertaining his ability to comprehend his rights. (*People v. Cooper* (1975), 30 Ill. App. 3d 326, 332, 332 N.E.2d 453, 458, *cert denied* (1976), 425 U.S. 994, 48 L. Ed. 2d 818, 96 S. Ct. 2206.) The particular facts and circumstances of each case, and the background, experience and conduct of the accused must be considered in determining whether a waiver is knowing and intelligent. *People v. Cooper* (1975), 30 Ill. App. 3d 326, 332 N.E.2d 453.

In *People v. Simmons* (1978), 58 Ill. App. 3d 1026, 374 N.E.2d 1290, this court held a minor's confession was admissible despite his

low intelligence. Defendant had passed the eighth grade and had been expelled in the ninth grade. He had received a score of 80 on the Wechsler adult intelligence scale. This placed him in the "dull normal" range. Citing *People v. Hester* (1968), 39 Ill. 2d 489, 500-02, 237 N.E.2d 466, the court noted that these facts did not make defendant incapable of understanding his *Miranda* warnings. This court deferred to the trial court's determination that the waiver was knowing and voluntary. In the case at bar, the defendant had approximately the same level of education, eighth grade, as the defendant in *Simmons*. He had a somewhat lower intelligence test score, *i.e.,* 77. However, defendant in the instant case was not a minor. He was 28 years old at the time of his arrest and had been arrested a number of times prior to this occurrence. In *Simmons*, the trial court noted that the defendant was articulate and understood his rights, that he was experienced in dealing with the criminal justice system, and that there was no evidence of physical force or coercion. *Simmons* indicates that the trial court in the instant case should be affirmed.

In *People v. Avery* (1980), 88 Ill. App. 3d 771, 410 N.E.2d 1093, the defendant was a 17-year-old who confessed to murder. On review her confession was held voluntary despite her marginal intelligence. She had a ninth grade education, an IQ of 78, and was diagnosed as having a personality disorder. The *Avery* court noted that defendant's mental capacity was but one factor in determining the voluntary nature of a confession from the totality of the circumstances.

The cases cited by defendant are inapposite. *People v. Markiewicz* (1976), 38 Ill. App. 3d 495, 348 N.E.2d 240, the principal case relied on by defendant, is distinguishable in that the inculpatory statement was taken from defendant while she was in the intensive care unit of a hospital and there was evidence that she was under the influence of drugs, near death, and had just begun to come out of a coma. In the instant case, although there was evidence defendant had been drinking, the defendant did not argue, and the record does not indicate, that he was so drunk he did not understand the *Miranda* warnings. Defendant also urges that the *Markiewicz* court gave great weight to the fact that defendant's expert testimony went unrebutted. Although the *Markiewicz* court affirmed the trial court's conclusion that the State's evidence was insufficient to overcome the defendant's expert medical testimony, the fact that the expert testimony went unrebutted was not the sole determining factor in the case. In fact, the court stated:

> "Admittedly, the trial court has no obligation to adopt, in whole or in part, the experts' medical conclusions. The judge, rather than the experts, was the trier of fact." (*People v. Markiewicz*

(1976), 38 Ill. App. 3d 495, 498-99, 348 N.E.2d 240, 243.)
Further, in the present case the defendant testified on his own behalf. The trial court was thus able to observe the defendant and evaluate his ability to respond to verbal questioning.

■ The defendant's evidence of limited intellectual capacity is one of the circumstances to be considered in reviewing the totality of the circumstances under which a confession is made. (*People v. Turner* (1973), 56 Ill. 2d 201, 306 N.E.2d 27.) In light of defendant's eighth grade education and the evidence of a lack of coercion by the police, we believe the trial court properly denied defendant's motion to suppress.

■ ■ The defendant's next contention on appeal is that evidence of his possession of a stolen CB radio was improperly admitted because it was not relevant for any proper purpose. Defendant contends that this evidence, together with the jury instruction regarding his responsibility for the theft of the CB radio, denied him a fair trial. The prosecution argued that the evidence was relevant to show absence of mistake and to establish defendant's intent and knowledge. We agree.

Defendant points out that his presence at the scene of the crime was not a fact in issue in the instant cause. He argues that the evidence of the theft of the radio is not relevant because it does not prove a fact in issue to the offense for which the defendant was tried.

It has generally been held that evidence of other crimes is admissible to show knowledge, intent, motive, design, plan or identification. (*People v. Alexander* (1982), 93 Ill. 2d 73, 442 N.E.2d 887.) Evidence of other crimes will not be admitted, however, where the grounds for establishing its relevance are speculative. (*People v. Spiezio* (1982), 105 Ill. App. 3d 769, 434 N.E.2d 837, 839.) The question of whether such evidence should be admitted as evidence requires the trial judge to balance the relevancy of that evidence against its prejudicial impact. *People v. James* (1981), 100 Ill. App. 3d 884, 888, 427 N.E.2d 248.

In the instant case, the defendant maintains he had no knowledge of the burglary or theft and did not intend to commit either crime. Thus, his state of mind as to knowledge and intent is in issue.

■ Despite the somewhat vague nature of the testimony regarding how the defendant and Randy came into possession of the radio, we believe that the evidence of Randy having received the radio was sufficiently probative to warrant being admitted into evidence. Defendant, in his own cross-examination testimony, conceded that he and Randy arrived at the model home without a CB radio, but when they left they had one. As previously indicated, the radio was recovered from defendant's vehicle when he was arrested. It was found un-

der the driver's seat. Defendant testified that Randy gave him the radio shortly after Randy had run off and then returned to the car. This occurred while they were at the model home. Randy gave him the radio for helping him.

■ Defendant's reliance on the case of *People v. Bailey* (1980), 88 Ill. App. 3d 416, 410 N.E.2d 545, and *People v. Gugliotta* (1980), 81 Ill. App. 3d 362, 401 N.E.2d 262, is misplaced. In the instant case, defendant was found in possession of the stolen CB radio, stove and dishwasher within minutes of the crime. The State contends that the evidence of his possession of the stolen goods was properly introduced into evidence. Both *Bailey* and *Gugliotta* involved evidence of subsequent criminal activity, while in the case at bar the evidence concerned criminal activity which, according to the Trotter testimony, took place at the scene of and at the same time as the crimes for which defendant was charged. For this reason, the evidence was probative on the question of defendant's motive and intent at the time of the crimes in issue. (*People v. Smith* (1972). 3 Ill. App. 3d 958, 279 N.E.2d 512; *People v. Clark* (1968), 104 Ill. App. 2d 12, 24-25, 244 N.E.2d 842.) Further, we believe the jury instruction on other-crimes evidence was properly given. This instruction, Illinois Pattern Jury Instruction (IPI), Criminal, No. 3.14 (2d ed. 1981), which advised the jury that evidence had been received that the defendant had been involved in an offense other than that he was charged with, was a limiting instruction which informed the jury that the other-crimes evidence was to be considered solely on the question of defendant's intent and knowledge. (*People v. Parker* (1976), 35 Ill. App. 3d 870, 343 N.E.2d 52.) We see no error in this regard.

In defendant's final contention on appeal he urges that the trial court erred in refusing to instruct the jury on the affirmative defense of ignorance or mistake, and erred in granting the State's instruction on the presumption arising from the possession of recently stolen property.

■ We first address the contention that the trial court erred in giving an instruction on the presumption arising from the possession of recently stolen property. Defendant argues that, because he conceded possession and the commission of the acts which resulted in the possession, it was prejudicial error for the trial court to allow this instruction. Thus, he contends, he is entitled to have the cause reversed and he should be granted a new trial. We disagree.

The appropriate time for the granting of IPI Criminal No. 13.21, regarding the presumption arising from the possession of recently stolen property, was discussed in the case of *People v. Housby* (1981),

84 Ill. 2d 415, 420 N.E.2d 151, *cert. denied* (1981), 454 U.S. 845, 70 L. Ed. 2d 131, 102 S. Ct. 160. *Housby* requires that three requirements be met for determining whether IPI Criminal No. 13.21 is proper. First, if there is a rational connection between possession of recently stolen property and participation in a burglary; second, guilt of burglary more likely than not flows from possession; and third, that there is evidence corroborating the inference. (*People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151, 155.) In the instant case, the defendant conceded that he was in possession of the stolen items, and there was evidence that the items had been stolen only a few minutes before he was found with them in his possession.

■■■ We believe there was sufficient evidence that the defendant's guilt of the crimes more likely than not did flow from his possession of the items. His story that his friend, Randy, asked for help in moving some property was a question of credibility and could easily be disbelieved by the jury. There was evidence that the car was being driven in the area after the burglary with its lights off, and that the men were arguing about where to take the items they removed from the house. These circumstances could suggest, more likely than not, that the defendant's involvement in the moving of the stolen goods was not innocent. Further, the defendant's explanation of his possession of that property could reasonably have been found to be false. Thus, there was evidence in the form of defendant's testimony corroborating his guilt, and that the three requirements of *Housby* have been met in the instant case.

The defendant's reliance on *People v. Smith* (1979), 77 Ill. App. 3d 666, 396 N.E.2d 638, is misplaced. In that case, a prosecution for armed robbery, this court held that it was error for the jury to be instructed on the definition of "possession" in a case where defendant had admitted possession of the stolen articles. However, the error was viewed as harmless in light of the strong circumstantial evidence incriminating defendant. Further, in *Smith* no challenge was made to IPI Criminal No. 13.21. *Smith* is inapposite. *People v. Moats* (1980), 89 Ill. App. 3d 194, 411 N.E.2d 573, also cited by defendant, is distinguishable. In *Moats*, defendant was prosecuted for receipt of stolen property and the court held he was prejudiced by the jury having been given instruction IPI Criminal No. 13.21. Although *Moats* does prohibit the giving of No. 13.21 when one is charged with receiving stolen property, it also specifically allows that instruction to be given when the defendant has been charged with theft, as in the instant case. (*People v. Moats* (1980), 89 Ill. App. 3d 194, 411 N.E.2d 573, 578.) We see no error in this instruction having been allowed.

 We next address the issue of defendant's requested instruction on the affirmative defense. Defendant had tendered a non-IPI instruction patterned upon the statute which makes ignorance or mistake as to a matter of fact or law an affirmative defense. The instruction tendered by the defense, taken from the statute (Ill. Rev. Stat. 1981, ch. 38, par. 4—8), stated:

> "A person's ignorance or mistake as to a matter of either fact or law *** is a defense if it negatives the existence of the mental state which the statute prescribes with respect to an element of the offense."

Defendant argues that if the court had properly allowed this instruction, then the State would have been required to disprove the defense of ignorance or mistake.

Generally, it has been held that if there is any evidence which supports the defendant's theory of the case, and if the defendant's instruction embodies that theory, then the instruction should be allowed. *People v. Fox* (1983), 114 Ill. App. 3d 593, 596, 449 N.E.2d 261, 264; *People v. Ulatowski* (1977), 54 Ill. App. 3d 893, 897, 368 N.E.2d 174, 177.

In this case defendant himself testified that it was his mistaken belief that he was helping his friend, Randy, move some property. In order to be guilty of burglary, defendant must have known that he entered the model home without authority and "with intent to commit therein a felony or theft." (Ill. Rev. Stat. 1981, ch. 38, par. 19—1(a).) In order to be guilty of theft in this case the State must show, *inter alia*, that defendant "knowingly" obtained control over property of another (Ill. Rev. Stat. 1981, ch. 38, par. 16—1(d)). Defendant presented evidence which showed the items were not knowingly taken under circumstances that would induce him to believe the property was stolen. Further, he presented evidence of his limited mental capacity. We note that his borderline mental retardation could have allowed him to make this mistake of fact; *i.e.*, thinking he was simply helping his friend, Randy, move some property. Defendant's statements throughout the case were consistent with his mistaken belief, except the purported statement he gave to Lieutenant Schinkel in the squad car—and this was given when defendant was sick.

 Because the defendant presented evidence in the form of his own testimony and expert opinion regarding his mental capacity which supports his theory that he lacked the requisite knowledge, the court should have allowed the defendant's instruction. Section 3—2(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 3—2(a)) provides that unless the State's evidence raises the issue involving the

alleged defense, in order for the defendant to raise the issue, he must present "some evidence" thereon. We believe the defendant presented such evidence and he was therefore entitled to the instruction. (*People v. Unger* (1977), 66 Ill. 2d 333, 338, 362 N.E.2d 319, 321.) We would also note that while the tendered instruction is not contained in IPI Criminal (2d ed. 1981), it is, we believe, simple, brief, impartial and free from argument, as required by Supreme Court Rule 451(a) (87 Ill. 2d R. 451(a)). Therefore, the trial court erred in denying defendant's requested instruction on ignorance or mistake of fact or law.

We cannot hold that this constituted harmless error. Although there was ample evidence to show that defendant was involved in removing the items from the home, the requested instruction would have allowed the jury to consider a key part of the case: whether defendant, in light of his level of intelligence, mistakenly thought he was simply helping a friend move some property.

The State contends that the affirmative defense of ignorance or mistake of fact or law was never raised by defendant. Rather, it urges, the jury was properly instructed on the defendant's theory of the case when they were instructed on the elements of burglary and theft in accordance with the IPI instructions which were given. The thrust of the State's argument is that in order to raise this affirmative defense defendant must show more than a denial of criminal intent. We disagree.

Raising the affirmative defense of ignorance or mistake can disprove the intent specified as an element of the crimes of burglary and theft. Absent an instruction on this point, the jury is not specifically made aware that ignorance or mistake of fact or law can negate the intent. Further, the statute clearly states that because ignorance or mistake of fact or law is an affirmative defense (Ill. Rev. Stat. 1981, ch. 38, par. 4—8(d)), the State must sustain the burden of proving the defendant guilty "as to that issue together with all other elements of the offense." (Ill. Rev. Stat. 1981, ch. 38, par. 3—2(b).) We believe that under the applicable statutes the defendant was entitled to have his defense presented to the jury by way of the requested instruction.

Therefore, defendant is entitled to a new trial. For the reasons stated, the judgment of the circuit court of Kane County is reversed and remanded for proceedings consistent with this opinion.

Reversed and remanded.

NASH and VAN DUESEN, JJ., concur.