THE PEOPLE OF THE STATE ILLINOIS, Plaintiff-Appellee, v. DAVID CRANE, Defendant-Appellant.

Second District   No. 2—87—0957

Opinion filed March 21, 1990.—Modified on denial of rehearing May 11, 1990.

DUNN, J., dissenting.

G. Joseph Weller and Patrick M. Carmody, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GEIGER delivered the opinion of the court:

The defendant, David Allen Crane, appeals from his two jury trial convictions of murder. (Ill. Rev. Stat. 1987, ch. 38, par. 9—1.) He challenges the court's refusal to suppress his statements, the jury instructions, and the adequacy of his representation by counsel. Although we reverse based upon an error in jury instructions, we address the suppression issue, as it is relevant to the defendant's possible retrial.

On January 7, 1987, Detectives Roger Costello and Larry Schultz traveled to and interviewed the defendant, who was being held on a traffic charge. During that interview, the defendant related the following. The victim, Robert Gahan, gave the hitchhiking defendant a ride and offered to smoke marijuana with him. After the two parked and smoked the marijuana, a struggle ensued between them. The victim fell to the ground after the defendant struck him repeatedly with numchucks.

The defendant further related that he then drove the victim's car to visit a friend, Brian Carlson, thinking that the victim was dead. After telling his story to Carlson, and at Carlson's suggestion, the defendant drove back to the body with plans to destroy the evidence by burning the body. The defendant poured gasoline on the body and ignited it. Several days later the defendant first heard that the victim had been alive when he was set on fire. Upon hearing that news, the defendant said he "just freaked out and started to cry."

The defendant's first argument on appeal is that the trial court erroneously declined to suppress his statement to the detectives. The following additional evidence from the suppression hearing is relevant to this first issue on appeal.

Detectives Costello and Schultz testified that at approximately 8:30 a.m. they began interviewing the defendant. They had no written waiver form; Detective Costello read the defendant his *Miranda* rights from a waiver card. Costello paused after each individual warning to ask the defendant if he understood. The defendant did not respond to any of the five individual warnings.

Further, according to the officers, after the defendant was read all the warnings, Costello asked if he understood all the warnings just read to him. After a short silence, the defendant nodded affirmatively. Thereafter, Costello asked if the defendant wished to talk with the detectives; he nodded. Detective Schultz informed the defendant that he had been the subject of an extensive investigation and explained that the officers wanted to obtain the defendant's version of the events. The defendant stared and gave no other response. Detective Schultz then showed the defendant a photograph of the victim's charred body. The defendant shoved the picture aside and stated that he had not murdered anyone. Detective Schultz related some of the information they had about the event to the defendant. The defendant asked to read some of the written statements the officers had collected. Although the officers showed the defendant the length of the statements and the signatures on the statements, they would not allow him to read them.

The officers' version of the defendant's interview concluded as follows: After 5 to 10 minutes of silence from the defendant, Detective Costello told him that, if he were not going to talk to the officers, he could say so and save them all time. The defendant looked down approximately 30 seconds, said that he had been unable to sleep "ever since this happened," then gave the statement at issue. Only after the defendant had given his statement and the officers inquired about taking a written statement did the defendant request a lawyer.

According to the defendant's testimony at the suppression hearing, while Detective Costello was reading his rights to him, Detective Schultz pulled out a photograph of the victim's charred body and held it in front of the defendant's face, saying "you burned him alive, you murdered him." The defendant was horrified and shocked; he stated that he had not murdered anyone and that he wanted a lawyer. Detective Schultz then pulled out some written statements and stated that "Carlson and Walters said you did." According to the defendant, he refused to talk to the officers and sat silently for at least half an hour; during that time the officers related what they had learned in their investigation.

The defendant estimated that about an hour after the interview began he began shaking. Thereafter he began speaking with the officers because he was intimidated by Detective Schultz. He renewed his request for a lawyer when the officers asked him to make a written statement, hoping to stop the interrogation. The defendant denied that he nodded his head to show that he understood the *Miranda* warnings. According to the defendant, he understood that he had the right to demand an attorney, but he was unsure he would be provided one.

On appeal, the defendant argues that the court should have ordered suppression of his statement. The defendant first challenges the believability of the officers' testimony, particularly that the defendant nodded, acknowledging understanding of his rights. The defendant emphasizes that the officers brought no written waiver form to the interview and that he was silent throughout the initial reading of his *Miranda* rights. The defendant also maintains that his silence corroborates his assertion that he repeatedly told authorities that he had nothing to say and that he wished to be left alone. The defendant claims that by showing him the photograph he was subjected to "psychological interrogation specifically designed to overcome [his] silence." Secondly, the defendant urges that by his period of complete silence he was invoking his right to remain silent, which the officers improperly failed to honor.

■■ To determine whether a statement was voluntary, a court must look to the totality of the relevant circumstances. (*People v. Cortez* (1986), 143 Ill. App. 3d 1024.) Where the trial court held an evidentiary hearing on a suppression matter, we will not disturb the court's finding unless it is manifestly erroneous. See *People v. Davis* (1986), 142 Ill. App. 3d 630.

■■ We find no reason to disturb the trial court's finding that the defendant's statement was voluntary. There is nothing inherently un-

believable in the officers' version of the relevant events. Here, there is no dispute that the questioning was at a reasonable hour, in a basically neutral setting, of moderate length, and free of physical abuse and promises from the police. (See *Cortez*, 143 Ill. App. 3d at 1026.) According to the police, the defendant was read his *Miranda* rights and nodded his understanding shortly before he began his statement. (See *People v. Brown* (1986), 146 Ill. App. 3d 101.) Furthermore, the officers could properly show the defendant evidentiary photographs without acting coercively. (See *People v. Gorham* (1978), 66 Ill. App. 3d 320.) The trial court judge, who observed the witnesses, could properly choose to rely upon the officers' testimony.

Based upon the State's evidence, the trial court could properly find, in this case, that the defendant neither cut off questioning nor interrupted questioning to request an attorney. (*Cf. Michigan v. Mosley* (1975), 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321.) It could further find that despite the officers' invitation to end questioning if the defendant would not speak, the defendant chose voluntarily to make his statement. The trial court's decision on suppression was not against the manifest weight of the evidence.

The defendant's next argument on appeal is that he was denied a fair trial by the court's refusal to instruct the jury on mistake of fact. The refused instruction was as follows: "A person's mistake as to a matter of fact is a defense if it negates the existence of the mental state which is an element of the offense charged."

The defendant was charged with two counts of murder in that he, without legal justification, "beat and burned" and thereby caused the death of the victim. Count I charged that the defendant acted "with intent to kill or do great bodily harm" (see Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(1)); count II charged that the defendant acted "knowing [his] acts created a strong probability of death or great bodily harm" (see Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(2)).

The defendant asserts that each charge actually refers to two independent acts: a beating and a burning separated by time. According to the defendant, to each independent act he presented a defense. Regarding the beating, the defendant maintained that based on the victim's attack, the defendant's action was taken in self-defense. Regarding the burning, the defendant maintained that he was not guilty of murder because when he took the relevant actions, he believed, perhaps erroneously, that the victim was already dead.

The jury was instructed on self-defense. However, the court refused the defendant's mistake-of-fact instruction. On appeal, the defendant argues that the court's failure to instruct on mistake of

fact was reversible error. In his argument, the defendant relies upon *People v. Ellison* (1984), 126 Ill. App. 3d 985.

In *Ellison*, the defendant asserted a mistake-of-fact defense to burglary, claiming that he had believed he merely was helping his friend move some property. This court found that the defendant had presented evidence which supported his affirmative-defense theory that he lacked the mental state requisite to the offense. Consequently we reversed the conviction, based upon the court's refusal to present the defendant's mistake-of-fact instruction to the jury. We consider *Ellison* controlling and find no reason to disavow it as the State urges.

■ In the instant case, as in *Ellison*, the defendant presented evidence to raise the affirmative defense of mistake of fact; based on that presentation and *Ellison*, he was entitled to receive his simple, brief, impartial, nonargumentative, non-Illinois Pattern Jury Instruction on that defense. (*Ellison*, 126 Ill. App. 3d at 997-98.) Furthermore, we find here, as we found in *Ellison*, that the court's failure to instruct was not harmless error. Without the instruction at issue, the jury was not made specifically aware that defendant's mistake of fact could have negated his guilt. See *Ellison*, 126 Ill. App. 3d at 998.

In finding reversible error, we first specifically observe that, contrary to the State's assertion, the defendant's mistake-of-fact theory had evidentiary support. Both Detective Costello and Detective Schultz testified that, in their questioning of him, the defendant specifically and repeatedly referred to his belief that the victim was dead prior to the burning incident. Also, the State's expert testimony on cause of death in no way dictated a conclusion that the victim died only after the defendant's acts of burning. The State's expert Powers testified that he could not conclusively say that the victim was dead at the time of the burning. The State's expert Blum testified that the victim could possibly have died from a cause other than the burning: for example, from positional asphyxia or the type of head wounds he had suffered. Blum further testified that a layperson seeing an unconscious human body with injuries like the victim's might reasonably assume that the victim was dead. The defendant's closing argument focused on the defendant's theory that the victim died before burning.

■ We also specifically observe that mistake of fact was a viable defense in this case, despite the decision in *People v. Deacon* (1985), 130 Ill. App. 3d 280, upon which the State relies. It is clear, as observed by the *Deacon* court, that murder does not require an intent to cause death. Under the murder statute and the *Deacon* decision, a defendant whose actions led to the victim's death may be guilty of murder either if he had knowledge that his actions threatened death

or great bodily harm or if he acted with indifference to whether the victim lived or died. (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(2); *Deacon*, 130 Ill. App. 3d at 287-88.) However, we find that even those lesser mental states can be negated by the instant theory of mistake of fact. One cannot have knowledge that his actions threatened death or great bodily harm to a corpse; similarly, one cannot be indifferent to whether a corpse lives or dies. Consequently, if the jury believed the evidence that the defendant thought the victim was dead when the defendant committed his acts of burning, it could not find the requisite mental state for murder in connection with those acts.

We find that if the jury believed both the defendant's self-defense theory and his mistake-of-fact theory, there would be no basis to convict him of murder for "beating and burning" the victim. The instant instruction was critical to the defendant's case.

As we find that the defendant's conviction must be reversed because of the instant improper instruction, we need not address the defendant's remaining arguments. In remanding the case for further proceedings we observe that, given the sufficiency of proof presented at the trial, we find no double jeopardy barrier to retrial. See *People v. Taylor* (1979), 76 Ill. 2d 289.

Based on the foregoing, we reverse the judgment of the circuit court of Winnebago County and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded.

WOODWARD, J., concurs.

JUSTICE DUNN, dissenting:

I respectfully dissent because I do not believe the affirmative defense of mistake of fact was available to defendant in light of the evidence presented at trial. Therefore, the trial judge's refusal to give the instruction offered by defendant concerning this defense was not error.

Defendant and the State are entitled to appropriate instructions presenting their theories of the case to the jury if the evidence supports those theories. (*People v. Janik* (1989), 127 Ill. 2d 390, 398; *People v. Lyda* (1989), 190 Ill. App. 3d 540, 544.) Unless the evidence is so clear and convincing that it enables the trial court to determine as a matter of law that there is no affirmative defense, the question of whether a defendant should be relieved of criminal liability because of an affirmative defense must be left to the jury, which must

be properly instructed as to the applicable law. *Lyda*, 190 Ill. App. 3d at 545.

An individual's ignorance or mistake as to a factual matter is an affirmative defense to a criminal charge "if it negatives the existence of the mental state which the statute prescribes with respect to an element of the offense." (Ill. Rev. Stat. 1987, ch. 38, par. 4—8.) The statute defining first degree murder states in relevant part as follows:

"A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:

(1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or

(2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another; or

(3) He is attempting or committing a forcible felony other than second degree murder." (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a).)

Both counts of the indictment alleged that defendant beat and burned Robert Gahan, thereby causing his death. Count I alleged that he did so with the intent to kill or cause great bodily harm; count II alleged that he did so knowing his acts created a strong probability of death or great bodily harm.

Considering the evidence presented in this case, even if defendant did mistakenly believe Gahan was dead when defendant burned him, this would not negate the requisite mental state for murder. According to the evidence, defendant admitted to several people that he beat Gahan with numchucks, martial arts instruments that are considered deadly weapons when used as bludgeons. (*People v. Van* (1985), 136 Ill. App. 3d 382, 384.) Defendant further admitted that he obtained a can of gasoline from a friend and returned to the scene of the beating shortly thereafter, whereupon he poured gasoline over the victim and burned him. The State presented unrebutted evidence that defendant beat Gahan with a deadly weapon and then burned the body, causing his death. In the opinion of the State's experts, Gahan was alive though unconscious at the time defendant began to burn his body, although these experts did not rule out the possibility Gahan was dead at this time as a result of the beating.

At the very least, according to the evidence, the beating rendered Gahan unconscious and therefore was a contributing factor in his death because it rendered him helpless when defendant burned

him. Regardless of whether defendant had a mistaken belief that Gahan was dead before the burning, defendant clearly had the requisite mental state for murder at the time of the beating, one of the events leading to Gahan's death. There is no doubt that defendant, in beating Gahan with a potentially deadly weapon, knew that his actions created a strong probability of death or serious bodily injury to Gahan. Since defendant's purported factual mistake could not have negated the existence of the requisite mental state for murder, he was not entitled to rely upon the affirmative defense of mistake of fact. The trial court properly refused to present to the jury the proposed instruction concerning this defense offered by defendant. The case upon which the majority relies, *People v. Ellison* (1984), 126 Ill. App. 3d 985, is clearly distinguishable because in that case defendant's purported mistaken belief that he was merely helping a friend move some property would have negated the requisite mental state for burglary.

The trial court gave proper instructions presenting defendant's theories of the case to the jury. The jury was properly instructed concerning self-defense and the requisite intent for murder. Thus, the jury was aware that if defendant reasonably believed the beating he administered to Gahan was necessary to prevent imminent death or great bodily harm to himself, the beating was a lawfully justified act. The jury was also aware that if defendant believed Gahan was dead at the time he burned Gahan's body, he could not have had the requisite intent for murder with regard to this act. Since the trial court correctly concluded as a matter of law that the defense of mistake of fact was not available to defendant and properly refused to give any instruction concerning this defense, I dissent from the majority's conclusion to the contrary. In so doing, I express no view about the issues raised by defendant, which were not considered by the majority.